**DUBLIN SCARBORO IMPROVEMENT ASSOCIATION, et al.**

v.

**HARFORD COUNTY, MARYLAND.**

Civ. No. S 87–2545.

United States District Court,
D. Maryland.

Feb. 9, 1988.

Anthony Z. Roisman, Richard S. Lewis, Cohen, Milstein & Hausfeld, Washington, D.C., Charles J. Piven, David Rodman Cohan, P.C., Baltimore, Md., for plaintiffs.

Max D. Miller, Co. Atty., Harford County Dept. of Law, Victor K. Butanis, Deputy Co. Atty., Bel Air, Md., for defendant.

## MEMORANDUM

SMALKIN, District Judge.

The complaint in this case alleges three causes of action brought under federal statutes and five causes of action brought under Maryland common law, all stemming from defendant's operation of a landfill. The federal claims are as follows:

1. Violation of the open dumping prohibition of the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6944(a), 6945(a) (1983 & 1987 Supp.);

2. Violation of the imminent hazard provision of RCRA, 42 U.S.C. § 6973 (1983 & 1987 Supp.); and

3. Violation of the liability provision of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (1983 & 1987 Supp.).

Under the common law of Maryland, the plaintiffs present the following five claims: nuisance, negligence, trespass, strict liability, and fraudulent concealment.

Pursuant to the Court's *sua sponte* request, both parties have submitted memoranda on the issue of whether the Court should exercise pendent jurisdiction over the claims brought under the common law of Maryland. No oral hearing is necessary to decide this matter. Local Rule 6, D.Md.

A federal district court may exercise pendent jurisdiction over state-law claims if it (1) has the authority to hear the claims and (2) determines, in its discretion, that the exercise of jurisdiction over the claims will further the policy goals of the doctrine of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), *Cf. Carnegie–Mellon University v. Cohill*, — U.S. —, —, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988) (applying the *Gibbs* rationale to hold that, where the only federal claim is dismissed early in the litigation, it is within the court's discretion to remand the previously removed case to the state court, in lieu of dismissal).

Both parties agree that this Court has the authority to hear the state-law claims. The disputed issue is whether this Court should exercise its discretion to adjudicate the state-law claims. In *Gibbs*, the

Supreme Court discussed several factors that may influence a court's decision whether to exercise pendent jurisdiction, as follows:

It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, ... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.... Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial.

383 U.S. at 726–27, 86 S.Ct. at 1139 (footnote and citation omitted).

Plaintiffs argue that the federal claims at issue in this case are not *pro forma* claims. According to the plaintiffs, their "primary goal in this litigation is to halt the illegal operation of the Landfill and to protect their health and property from future damage." (Paper No. 8, at 11). While the Court agrees that this case is not one in which the "state claim constitutes the real body of [the] case, to which the federal claim is only an appendage,"[1] the Court does not agree that the plaintiffs' stated objective supports the exercise of pendent jurisdiction in this case. The Court believes that the primary goal of the plaintiffs, as well as the primary goal of the Congress in passing the citizen suit provisions of the legislation creating plaintiffs' federal claims, will be best served if the state claims are dismissed.

The Court believes that the state-law claims will encumber this Court and the parties to the extent that the goal of expeditious determination of the rights of the parties will be impaired. Comments in the majority and minority reports included in the legislative history of the Hazardous and Solid Waste Amendments of 1984, P.L. No. 98–616, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, manifest that just such a concern was shared by the drafters of the Amendments. The minority report reads, in pertinent part, as follows:

Our second objection to the Enforcement Section of H.R. 2867 arises from the Committee's refusal to adopt a clarifying amendment to Section 12(f), the citizen suit provision. That amendment stated that no district court before which an imminent and substantial endangerment action is brought is empowered to hear related state law claims. That amendment simply clarified what we had understood to be the intention of the citizen suit provision and that is to give citizens a federal cause of action to abate imminent and substantial endangerments created by hazardous waste disposal facilities.

Unfortunately, we believe the citizen suit provision goes much further than was intended because, under a legal doctrine called pendant [sic] jurisdiction, citizens will have the opportunity to try to bring all related state claims they may have into the federal court system when they sue to abate imminent hazards. In our opinion, this is an extremely troubling result for a number of reasons. First, there would be a potentially crushing new burden on the federal court system. This court system is a fraction of the size of the state court system and is not equipped to resolve complicated state

---

1. *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1140.

law questions. Federal court judges would at times have to turn to state courts for guidance during the course of the suit. This could slow down the proceeding which, as we understand it, is intended to be an emergency type action to abate imminent hazards. Instead of ending the imminent hazard, federal judges will be trying to decide cumbersome questions of state law nuisance, trespass, and personal and property damage compensation.

*Id.* at 5634–35.

The majority report concerning the citizen suits provision contained the following comment:

Although the Committee has not prohibited a citizen from raising claims under state law in a section 7002 action, the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.

*Id.* at 5612.

It is the opinion of this Court that the pursuit of the state-law claims in this case will frustrate the goal of the federal citizen suit provisions by preventing the prompt disposition of the allegations of imminent and substantial endangerments. Plaintiffs assert five state-law claims: nuisance, negligence, trespass, strict liability, and fraudulent concealment. These claims, particularly the nuisance claim, involve issues of great local concern. The legal issues, the theories of liability, and the defenses pertinent to the state-law claims are substantially different from those involved in the federal claims. While all the claims in some way involve the issue of whether or not the landfill is leaking, the state-law claims also involve issues of knowledge, intent, concealment, and very complex damage issues. The discovery on the state-law claims, with their separate legal theories and defense, is necessarily broader than on the narrow federal claims.

Most persuasive, however, is the fact that the state-law claims involve issues triable to a jury. In contrast, the federal claims involve only the possible recovery of response or clean-up costs rather than compensatory or punitive damages of a traditional nature. *See, e.g., Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 376–78 (W.D.Tenn.1985) (claim under CERCLA is limited to response costs); *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir.1985) (no private action for damages available under the RCRA). Consequently, the Seventh Amendment allows no jury trial in citizen suits under these federal statutes. *See e.g., United States v. Dickerson*, 640 F.Supp. 448, 453 (D.Md.1986) (no jury trial available under CERCLA); *see also Walls*, 761 F.2d at 315 (only injunctive and other equitable relief available under RCRA). There is, in contrast, a clear right to a jury trial on the state tort claims asserted in this action. Quite obviously, a jury trial of the state-law claims would be much more cumbersome and time-consuming than a bench trial of the federal claims, especially given the number of separate issues that would have to go to the jury on the state-law claims.

In a Title VII case, Judge Motz of this Court has held that where pendent state law claims substantially broaden the issues beyond those posed in the federal claims, and where the pendent claims involve a jury trial and the federal claims do not, the goals of the doctrine of pendent jurisdiction would not be furthered by its exercise. *Kritil v. Port East Transfer, Inc.*, 661 F.Supp. 66 (D.Md.1986). Judge Motz reasoned as follows:

In the very cases in which such claims are asserted, what was intended by Congress to be expeditious is made prolix. Moreover, federal courts have limited resources. To the extent that they must spend substantial time in trying what are essentially state law cases, they are prevented from deciding on an expeditious basis other cases in which genuine federal claims and legitimate federal questions are presented. In the ill-conceived or unconsidered expansion of power lies its dilution.

*Id.* at 67–68 (footnotes omitted).

Judge Motz's reasoning is even more persuasive when applied to the present case, in

view of Congress's expressed concern over the possibility of slowing down litigation that was meant to proceed on an expeditious basis. This Court believes the exercise of pendent jurisdiction over the state common law tort claims in this case would unduly broaden and complicate the scope of the issues raised, the comprehensiveness of the remedies sought, and the fact-finding process employed. *See Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 377–78 (W.D. Tenn.1985) (dismissing state claims for substantial predomination over CERCLA claims) and *Wehner v. Syntex Corp.*, 622 F.Supp. 302, 304 (E.D.Mo.1983) (dismissing state claims for substantial predomination over CERCLA claims).

Accordingly, the causes of action brought by plaintiffs under the Maryland common law theories of nuisance, negligence, trespass, strict liability, and fraudulent concealment are hereby dismissed, without prejudice. The "cause of action" for punitive damages (actually only an element of tort damages, rather than a separate cause of action) is also dismissed. Additionally, plaintiffs' demand for a jury trial is stricken. In sum, paragraphs 127 through 160 of the complaint are dismissed, as well as so much of paragraph 161 as requests relief pursuant to the dismissed claims. An order providing all the above will be entered separately.

### ORDER

For the reasons stated in the foregoing Memorandum, IT IS, this 9th day of February, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' causes of action brought under the common law claims of nuisance, negligence, trespass, strict liability, and fraudulent concealment BE, and the same hereby ARE, DISMISSED;

2. That plaintiffs' "cause of action" for punitive damages BE, and the same hereby IS, DISMISSED;

3. That plaintiffs' demand for a jury trial BE, and the same hereby IS, STRICKEN;

4. That paragraphs 127 through 160 of the complaint, as well as so much of paragraph 161 as requests relief pursuant to those paragraphs BE, and the same hereby ARE, DISMISSED; and

5. That the Clerk mail a copy of this Order and the foregoing Memorandum to counsel for the parties.