COMMERCE HOLDING COMPANY, INC., Plaintiff,

v.

Stanley BUCKSTONE, Herbert Buckstone, Phyllis A. Roth, Wendy C. Roth and Richard C. Roth, Executors of the Estate of Jerrold Roth, and Tronic Plating Company, Inc., Defendants.

No. CV 89–2706.

United States District Court, E.D. New York.

Oct. 16, 1990.

As Corrected Nov. 27, 1990.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano by Andrew J. Simons, Uniondale, N.Y., for plaintiff.

Nixon, Hargrave, Devans & Doyle by Frank L. Amoroso, Garden City, N.Y., for defendants Buckstone.

Meyer, Suozzi, English & Klein, Mineola, N.Y., for defendants Roth.

Ruskin, Schlissel, Moscou, Evans & Faltischek, P.C., Mineola, N.Y., for defendant Tronic Plating Co., Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Commerce Holding Company, Inc. ("Commerce") brings this action against defendants Stanley Buckstone and Herbert Buckstone ("the Buckstones"), Phyllis Roth, Wendy Roth and Richard Roth as executors of the estate of Jerrold Roth ("Roth") (collectively, "the Roth defendants"), and Tronic Plating Company, Inc. ("Tronic") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k, and various pendent state claims seeking declaratory, injunctive, and monetary relief as well as costs and expenses of litigation, including reasonable attorney's fees. Presently before the Court are defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6),[1] and Commerce's cross-motion for partial summary judgment on the issue of defendants' liability under CERCLA pursuant to Fed.R.Civ.P. 56.[2]

## I. BACKGROUND

### A. *Factual Allegations in the Complaint*

As alleged in the complaint, Commerce is the owner of commercial property in a large industrial park in Farmingdale, New York (the "site"). The site is approximately one-half acre on a less than three acre lot, and is listed by the United States Environmental Protection Agency ("EPA") on the National Priorities List ("NPL") as a hazardous waste site. *See* 40 C.F.R. pt. 300, app. B. The NPL is maintained pursuant to CERCLA. *See* 42 U.S.C. § 9605(a)(8)(B). From about July 1968 through March 1984, Commerce leased the site to Tronic, which operated a business of electroplating and anodizing electronic component parts. The complaint does not explain what use, if any, was made of the site before or after this period of time. Tronic's operations during this period were handled by the Buckstones and Roth, Tronic's officers and only shareholders—each owned one-third of Tronic's shares. During the course of its operations, Tronic discharged industrial process wastewater containing toxic and hazardous substances, as defined by CERCLA, 42 U.S.C. § 9601(14), into the surrounding grounds through its underground leaching pools. The chemicals and substances included, *inter alia*, cyanide, copper, lead, cadmium, zinc, silver and iron. Nevertheless, defendants have taken no remedial actions respecting such contaminants.

In or about August 1987, EPA notified Commerce that it intended to conduct a remedial investigation and feasibility study ("RI/FS") of the site to determine the nature and extent of any release or threatened release of hazardous substances at the site and, thereupon, to select an appropriate remedial alternative. At the same time, EPA also notified Tronic that it considered Tronic a potentially responsible person under CERCLA, 42 U.S.C. § 9607(a)(2), and offered Tronic the opportunity, which Tronic declined, to participate in the RI/FS through an administrative order on consent. On May 20, 1988, Commerce and EPA entered into an administrative order on consent, pursuant to which Commerce agreed to undertake various response and remedial activities at the site (hereinafter "EPA/Commerce Consent Order"). In December 1988, Commerce notified defendants that it considered them responsible for the conduct causing and the conse-

---

1. The Buckstones and Tronic moved jointly. The Roth defendants then joined in the motion on the papers submitted by the Buckstones and Tronic.

2. Defendants jointly oppose Commerce's cross-motion for partial summary judgment.

quences arising from the violations of CERCLA, RCRA and common law. Nevertheless, defendants refused to respond to Commerce's notification and demand.

### B. *Counts in the Complaint*

The complaint, in eight counts, seeks relief on the following bases: (1) CERCLA; (2) RCRA; (3) public nuisance; (4) private nuisance; (5) strict liability for carrying on an abnormally dangerous activity; (6) trespass; (7) negligence; and (8) waste (under New York's Real Property Actions and Proceedings Law). As noted above, Commerce seeks declaratory, injunctive, and monetary relief, including attorney's fees.

### C. *The Parties' Motions*

In their motion to dismiss, defendants challenge the complaint on the following grounds: (1) the first count (the CERCLA claim) must be dismissed because Commerce fails to allege that the response costs sought to be recovered have been and will be incurred "consistent with the national contingency plan ('NCP')"; (2) the second count (the RCRA claim) must be dismissed because a private cause of action for damages is not maintainable under RCRA, because Commerce fails to allege the improper handling or disposal of "hazardous wastes" regulated under RCRA, and because the EPA/Commerce Consent Order prohibits such a claim; (3) the third count (the public nuisance claim) must be dismissed for failure to allege that Commerce has suffered special injury while exercising a right common to the general public; and (4) all the pendent state law claims should be dismissed because the exercise of pendent jurisdiction is inappropriate in this case.

By cross-motion, Commerce seeks partial summary judgment as to defendants' liability under CERCLA for response costs and other damages. Commerce contends that Tronic and the individual defendants are each liable as an operator of a facility who has caused a release of hazardous substances resulting in its incurring necessary costs of response consistent with the NCP. Commerce requests that if this Court grants defendants' motion to dismiss, that the Court grant it leave to replead and hold the motion for partial summary judgment in abeyance.

## II. DISCUSSION

### A. *Defendants' Motion to Dismiss*

■ On a motion to dismiss, the allegations of the complaint must be accepted as true, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and the complaint must be construed in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). To prevail, the defendant must prove that under no interpretation of the facts alleged can the plaintiff succeed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). With these principles in mind, the Court turns to assess the sufficiency of the complaint.

#### 1. *Count One*

■ Pursuant to CERCLA, state and federal governments and private parties are authorized to sue responsible persons for costs incurred in responding to releases or threatened releases of hazardous substances into the environment. *See* 42 U.S.C. § 9607(a). As applicable to Commerce's CERCLA claim, § 9607(a) provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> .   .   .   .   .
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> .   .   .   .   .
>
> ... [if] there is a release; or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
>
> .   .   .   .   .
>
> (B) any other necessary costs of response incurred by any other person con-

sistent with the national contingency plan....

*Id.* Where, as here, the party seeking recovery is an individual or other non-governmental entity, as indicated, CERCLA provides for recovery of "necessary costs of response"[3] only to the extent that the costs were incurred "consistent with the NCP." Response costs are defined in CERCLA as either "removal" actions or "remedial" actions. 42 U.S.C. § 9601(25). Removal actions are generally short-term cleanup arrangements and remedial actions are generally long-term or permanent containment or disposal programs. *See id.* § 9601(23), (24); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1043 (2d Cir.1985). The NCP is specifically authorized by 42 U.S.C. § 9605, and is promulgated at 40 C.F.R. § 300 *et seq.* As authorized by § 9605, the revised NCP is designed to establish procedures and standards for responding to releases of hazardous substances.

The complaint alleges that due to defendants' release of the contaminants at the site, Commerce has and will continue to incur response costs as defined by CERCLA. In this respect, Commerce claims that defendants are liable to it

> for costs of independent studies to determine the extent of the contamination caused by defendants and the cost of removal of additional waste which might contaminate or will continue to contaminate the groundwater, soil and air, and the cost of independent sampling and monitoring of the soil, water and air for an indefinite period of time.

Complaint para. 55.

Defendants contend that Commerce's CERCLA claim is defective because Commerce failed to plead that the response costs for which it seeks recovery were and will be incurred "consistent with the NCP." Defendants argue that a plaintiff is required to specifically plead the words "consistent with the NCP." Commerce con-

cedes that nowhere in the complaint does it allege these specific words.

■ While a private party, to recover its response costs, bears the burden of pleading and proving that the costs incurred are consistent with the NCP, the question of consistency with the NCP cannot be determined on the complaint alone but requires the development of a factual record. *See New York v. Shore Realty Corp.,* 648 F.Supp. 255, 262 (E.D.N.Y.1986); *see also Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62 (D.N.H.1990). In light of the liberal pleading requirements of the Federal Rules of Civil Procedure, *see* Fed. R.Civ.P. 8(a), for pleading purposes, Commerce "need only aver the words 'consistent with the NCP.'" *Shore Realty,* 648 F.Supp. at 264. This averment, however, is absent from the complaint. Commerce nevertheless urges the Court to deem the complaint to aver that Commerce seeks to recover costs of response incurred consistent with the NCP. Based on the record before the Court, including Commerce's motion for partial summary judgment (notwithstanding the Court's decision not to address that motion at this time), the Court believes that defendants are given adequate notice that Commerce seeks to recover only those costs of response incurred consistent with the NCP. Hence, the complaint is deemed amended to allege, in general terms, that Commerce's response costs are consistent with the NCP. *See id.* at 262–63; *see also United States v. Southeastern Pa. Transp. Auth.,* 24 Env't Rep. Cas. 1860, 1986 WL 7565, slip op. at 2–4 & 4 n. 1 (E.D.Pa. July 2, 1986). Accordingly, the CERCLA claim need not be dismissed on this ground.

### 2. *Count Two*

Commerce brings its RCRA claim pursuant to the RCRA citizen-suit provision. *See* 42 U.S.C. § 6972. In particular, Commerce asserts jurisdiction under § 6972(a)(1)(B), which provides, in pertinent part, that

---

**3.** Such party cannot, however, recover "damages for injury to, destruction of, or loss of natural resources, including the reasonable

costs of assessing such injury, destruction, or loss...." 42 U.S.C. § 9607(a), (f).

any person may commence a civil action on his own behalf—

. . . . .

(B) against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . .

*Id.* § 6972(a)(1)(B). While this grant of standing is apparently quite broad, its breadth is tempered by the type of relief available. In this regard, the statute provides:

The district court shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), [or] to order such person to take such other action as may be necessary. . . .

*Id.* § 6972(a).

As noted above, defendants challenge the RCRA claim because of the relief Commerce purportedly seeks. More specifically, defendants argue that Commerce cannot maintain this claim because it is in essence an action for damages in that it seeks to recover the "cost of past and future remediation," and RCRA does not provide a private cause of action for damages. In opposing this argument, Commerce directs the Court to the paragraph in the complaint where it seeks "to recover the cost of past and future remediation and . . . such other relief as may be necessary to remedy the results of defendants' illegal conduct." Complaint para. 61. Though apparently disputing defendants' contention that a private action for damages is precluded, Commerce explains that it is not seeking "legal damages" or "compensatory damages" under RCRA, "but only equitable relief in the form of reimbursement for costs for remediation of the Site." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 22. Commerce further explains that by the phrase "such other relief," it is seeking injunctive relief as well as civil penalties, which it maintains are available under RCRA. *Id.* at 21. The Court notes that in the demand in the complaint Commerce seeks

an injunction directing defendants to determine the full scope of the soil and water damage due to hazardous waste contamination originating in and around the site, to remove all soil and water contamination and to enter into a comprehensive soil and water testing and monitoring program for an indefinite period of years to detect and prevent reoccurence of pollution from hazardous waste contamination originating from the site.

Complaint p. 16.

■ While injunctive relief is available under § 6972(a)(1)(B), the statute does not provide a private action for damages. *See* 42 U.S.C. § 6972(a); *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir. 1985). Nor should one be implied. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981). Even construing Commerce's request for recovery of its "costs for remediation" to be for "equitable relief," as it urges, it cannot maintain its RCRA claim. If awarded this relief, Commerce would be the direct beneficiary of the substantive relief. Thus, regardless of how the request is denominated, it does not comport with the statute's purpose of allowing private parties to bring suit if "genuinely acting as private attorneys general rather than pursuing a private remedy," *Environmental Def. Fund, Inc. v. Lamphier,* 714 F.2d 331, 337 (4th Cir.1983). Moreover, civil penalties are not available to a citizen-plaintiff in an action brought under § 6972(a)(1)(B). *See* 42 U.S.C. § 6972(a); *Coburn v. Sun Chem. Corp.,* 28 Env't Rep. Cas. 1665, 1988 WL 120739, slip op. at 8 (E.D.Pa. Nov. 9, 1988).

To the extent that Commerce seeks injunctive relief in its RCRA claim, the Court notes defendants' argument that Commerce cannot maintain the RCRA

claim because the EPA/Commerce Consent Order precludes a citizen suit under § 6972(a)(1)(B), the subsection invoked by Commerce. *See* 42 U.S.C. § 6972(b)(2)(B)(iv). Under § 6972(b)(2)(B)(iv) any citizen suit by Commerce is prohibited to the extent of the scope and duration of the EPA/Commerce Consent Order. *See id.* Commerce, however, has not briefed this issue as it was first raised by defendants in their reply papers. Finding possible merit in defendants' contention, the Court will wait to address the issue of whether the EPA/Commerce Consent Order precludes Commerce's RCRA claim until Commerce has briefed the issue. Accordingly, Commerce is granted fifteen days from the date of this order to serve and file a memorandum addressing the question of whether its RCRA claim is prohibited by the EPA/Commerce Consent Order. In the event Commerce maintains that it is not barred, defendants may serve and file a reply memorandum, if any, within five days of service of Commerce's opposing memorandum. If the Court should at that time determine that the RCRA claim is viable, the Court will then consider defendants' remaining challenge to the RCRA claim.

### 3. *Pendent State Claims*

As for the state claims, defendants contend that this Court should dismiss all of these claims in the exercise of its discretion under the doctrine of pendent jurisdiction. Commerce argues that, to the contrary, a prudent exercise of discretion calls for retaining jurisdiction over the state claims.

In order for a federal court to exercise pendent jurisdiction over state claims, the federal claims must be substantial and the federal and state claims "must derive from a common nucleus of operative fact" and be such that plaintiff would be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The parties apparently concede that Commerce's CERCLA claim is of sufficient substance to confer authority on the Court to entertain the state claims, and that the CERCLA and state claims derive from a common nucleus of operative fact. The question therefore is whether this Court should in its discretion exercise pendent jurisdiction over Commerce's state claims.

As explained by the Supreme Court in *Gibbs*:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.... Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial.

*Id.* at 726–27, 86 S.Ct. at 1139 (citations and footnotes omitted).

■ Applying the principles espoused in *Gibbs*, the Court finds that in terms of proof, the scope of the issues raised, and the extent of the remedy sought, the state claims substantially predominate the CERCLA claim. The state claims and the CERCLA claim differ significantly in various respects, particularly as to the nature of the legal issues, the required degree of culpability which must be established, and the applicable defenses. *See, e.g., Dublin Scarboro Imp. Ass'n v. Harford County,*

678 F.Supp. 129, 132–33 (D.Md.1988); *see also Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 377–78 (W.D.Tenn.1985); *Wehner v. Syntex Corp.*, 622 F.Supp. 302, 304 (E.D.Mo.1983). For instance, CERCLA limits Commerce's recovery to its response costs and provides for strict liability, whereas various of the state claims allow for the recovery of consequential and punitive damages and are not based on strict liability, such as the negligence claim. In addition, a jury trial is not available for the CERCLA claim,[4] but is for the state claims. *See, e.g., Dublin Scarboro Imp. Ass'n*, 678 F.Supp. at 132–33 (considered most persuasive of factors in determination to dismiss state claims). Accordingly, the Court determines that, under the circumstances, a prudent exercise of pendent jurisdiction warrants the dismissal of the state claims without prejudice. Consequently, the Court need not address defendants' challenge to Commerce's public nuisance claim.

### B. *Commerce's Motion for Partial Summary Judgment*

Though Commerce's motion for partial summary judgment is technically timely under the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 56(a), considering how early into the proceeding the motion was brought and the nature of the issues raised in light of the Court's inquiry on such a motion and the absence of discovery by the parties at the time the motion was made, the motion is denied without prejudice to its being renewed.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted to the extent that the pendent state claims are dismissed without prejudice, but is denied as to the CERCLA claim and, until further briefing, is denied as to the RCRA claim insofar as it seeks injunctive relief. In addition, Commerce's motion for partial summary judgment is denied without prejudice to its be-

ing renewed. Defendants are not required to answer the complaint in respect to the CERCLA claim until the Court renders its decision on the RCRA claim. The parties are directed to contact the Court within thirty days of the date of this order to schedule a conference in this matter.

SO ORDERED.

---

**4.** *See, e.g., United States v. Northeastern Pharm. & Chem Co.*, 810 F.2d 726, 749 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Northernaire Plating Co.*, 685 F.Supp. 1410, 1413 (W.D.

Mich.1988), *aff'd sub nom. United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *United States v. Dickerson*, 640 F.Supp. 448, 453 (D.Md.1986).