**KFC WESTERN, INC., Plaintiff–Appellant,**

v.

**Alan MEGHRIG; Margaret Meghrig, Defendants–Appellees.**

No. 92–56597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1994.

Decided March 1, 1995.

Daniel Romano, Santa Monica, CA, for plaintiff-appellant.

John P. Zaimes, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, CA, for defendants-appellees.

Opinion by Judge Harry PREGERSON; Dissent by Judge BRUNETTI.

Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.

PREGERSON, Circuit Judge:

KFC Western, Inc. ("KFC") appeals the district court's dismissal of its action under the Resource Conservation and Recovery Act ("RCRA") to recover environmental clean-up costs from the prior owners of contaminated property sold to KFC. The district court dismissed KFC's action under Federal Rule of Civil Procedure 12(b)(6) because it concluded that RCRA § 7002, codified at 42 U.S.C. § 6972(a)(1)(B), does not authorize private plaintiffs to collect a restitutionary remedy. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## BACKGROUND

In September 1975, Alan and Margaret Meghrig (the "Meghrigs") sold real property to KFC, which continues to own and operate a Kentucky Fried Chicken franchise on the property. Unbeknown to KFC, underground soil at the property was contaminated with elevated levels of refined petroleum products (lead and benzene) at the time of the sale. The contamination allegedly resulted from the Meghrigs' negligence in operating a gasoline station on the property. The Meghrigs never informed KFC about the contamination.

In October 1988, in the course of improving the property, KFC discovered the contaminated soil. The City of Los Angeles Department of Building and Safety issued a corrective notice ordering KFC to stop all construction on the property pending analysis of the soil and clearance from the County of Los Angeles Department of Health Services (the "DHS"). Analysts confirmed the presence of elevated levels of refined petroleum in the soil. Although KFC neither caused the contamination nor owned the property when the contamination occurred, the DHS ordered KFC to clean up the property. KFC spent over $211,000.00 to assess and remove the contaminated soil for off-site disposal. KFC completed the clean-up in 1989 and, in June 1990, asked the Meghrigs to reimburse the costs. The Meghrigs refused.

On May 29, 1992, KFC filed a complaint in district court against the Meghrigs under RCRA § 7002, codified at 42 U.S.C. § 6972(a)(1)(B), for restitution of the expended clean-up costs. The Meghrigs filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint, offering two reasons why KFC's action did not come within the RCRA citizen suit provision: (1) there was no "imminent and substantial endangerment" because KFC had completed the clean-up three years before filing, and (2) RCRA authorized suits for injunctive relief only, not for damages. The district court granted the Meghrigs' motion and granted KFC leave to amend its complaint.

KFC filed an amended complaint which alleged that the contaminated soil, at the time of clean-up, presented an "imminent and substantial endangerment" to public health and the environment by threatening surrounding groundwater and potentially risking the health of people expected to use the property and the KFC franchise. RCRA § 7002, codified at U.S.C. § 6972(a)(1)(B). Also, KFC stated that its damages claim was actually a claim for "equitable restitution." Upon the Meghrigs' renewed motion, the district court dismissed the amended complaint. In its dismissal order, the district

court stated that 42 U.S.C. § 6972(a)(1)(B) authorizes only injunctive or other equitable relief and only in cases involving an existing, imminent danger to public health or the environment. KFC appeals.

## ANALYSIS

We review *de novo* a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, ——, 113 S.Ct. 655, 656, 121 L.Ed.2d 581 (1992). In reviewing such a dismissal, our review is limited to the contents of the complaint, *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992), and we must take as true all allegations of material fact and construe them in the light most favorable to the plaintiff, *Oscar,* 965 F.2d at 785.

This appeal presents us with a question of first impression—whether the RCRA citizen suit provision authorizes a private plaintiff to collect restitution of clean-up costs. The RCRA citizen suit provision provides:

> [A]ny person may commence a civil action on his own behalf ... against any person ... including any ... past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which *may present an imminent and substantial endangerment* to health or the environment[.]
>
> .  .  .  .  .  .
>
> The district court shall have jurisdiction ... to *restrain* any person who *has contributed* or who is contributing to the past or present handling, storage, treatment, transportation, of disposal or any solid or

hazardous waste referred to in [§ 6972(a)(1)(B) (the endangerment provision) ] [and] to *order such person to take such other action as may be necessary,* or both. . . .

RCRA § 7002, codified at 42 U.S.C.A. § 6972(a)(1)(B) and § 6972(a) (West 1984 & Supp.1993) (emphasis added).

■ The parties dispute initially whether, for purposes of § 6972(a)(1)(B), "imminent and substantial endangerment" must exist at the time the plaintiff files a complaint or may exist at the time of clean-up. The Meghrigs urge us to adopt the district court's reasoning that § 6972(a)(1)(B) authorizes citizen suits only if contamination poses an imminent and substantial endangerment at the time the plaintiff files the complaint. Because KFC completed the clean-up of the property three years before commencing this lawsuit, the Meghrigs argue that KFC has no remedy under RCRA. The result urged by the Meghrigs is supported by certain comments in the legislative history that explain the meaning of the term "imminence." "Imminence in this section applies to the nature of the threat. . . . The section, therefore, may be used for events which took place at some time in the past but *which continue to present a threat* to the public health or the environment." Staff of House Subcommittee on Oversight and Investigation, Committee on Interstate and Foreign Commerce, 96th Cong., 1st Sess., Hazardous Waste Disposal 32 (Comm. Print 96–IFC 31, 1979) ("Eckhardt Report") (emphasis added). *See Dague v. City of Burlington,* 935 F.2d 1343, 1356 (2d Cir.1991) (finding an "imminent hazard" requires proof that a risk of harm is present), *rev'd in part on other grounds,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *United States v. Price,* 688 F.2d 204, 214 (3d Cir.1982) (noting that imminent danger existed at the time of the district court's hearing).[1]

---

1. The Meghrigs also cite *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (Clean Water Act case) and *McClellan Ecological Seepage Situation v. Weinberger,* 707 F.Supp. 1182, 1187 (E.D.Cal.1988) (dismissing for mootness a RCRA action under § 6972(a)(1)(A)), which are inapposite. Both cases explain only that citizen suit

provisions not at issue here do not apply retroactively to allow an action against a defendant who violated a statutory obligation in the past, if the defendant no longer allegedly is "in violation." In contrast, § 6972(a)(1)(B) applies both prospectively and retrospectively, *to persons who contributed in the past to current endangerment. See Ascon Properties, Inc. v. Mobil Oil Co.,* 866

Nonetheless, we agree with KFC that RCRA authorizes citizen suits with respect to contamination that in the past posed imminent and substantial danger. We choose to follow the Eighth Circuit's interpretation of RCRA § 7003, codified at 42 U.S.C. § 6973, which authorizes suits by the Administrator of the Environmental Protection Agency ("EPA"), and which is worded virtually identically to § 6972(a)(1)(B).[2] The Eighth Circuit reads the imminent endangerment requirement as "limit[ing] the reach of RCRA to sites where the potential for harm is great" but not as limiting the time for filing an action. *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989).

In *Aceto Agric. Chemicals Corp.*, the Eighth Circuit, when it reversed a Federal Rule of Civil Procedure 12(b)(6) dismissal order, addressed and rejected the same arguments that the Meghrigs make here. The defendants in the Eighth Circuit case argued that because the plaintiff (EPA) cleaned up the site before bringing suit, the required "imminent and substantial endangerment" did not exist. The court concluded that the language of RCRA "does not require the EPA to file and prosecute its RCRA action *while* the endangerment exists." *Id.* The court explained that RCRA's purpose "is to 'give broad authority to the courts to grant all relief necessary to ensure complete protection of the public health and the environment. The limitation urged by defendants would defeat this purpose,'" would be an "absurd and unnecessary" requirement. *Id.* (citations to quoted material omitted).

■ We also agree with KFC that RCRA authorizes a restitutionary remedy under these circumstances. KFC's action to collect restitution of clean-up costs falls within the statutory allowance for district court orders that defendants take "such other action as may be necessary...." 42 U.S.C. § 6972(a) ("The district court shall have jurisdiction ... to restrain any person who has contributed or who is contributing to [an imminent and substantial endangerment], to *order such person to take such other action as may be necessary, or both....*") (Emphasis added). We reject the Meghrigs' contention that the statute entitles citizens to obtain only an injunction or other equitable relief that is not the equivalent of compensatory money damages.

Because Congress intended that citizen suits be governed by the same standards of liability as governmental actions,[3] and be-

F.2d 1149, 1159 (9th Cir.1989) (citing *Gwaltney*, 484 U.S. at 57 & 58 n. 2, 108 S.Ct. at 381 & 382 n. 2, wherein the Supreme Court described the section as one where "Congress has demonstrated ... that it knows how to avoid [limiting a statute to prospective application] by using language that expressly targets past violations").

2. Specifically, § 6973 provides:
[U]pon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste *may present an imminent and substantial endangerment* to health or the environment, the Administrator may bring suit ... against any person ... who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to *restrain* such person from [such activity], to *order such person to take such other action as may be necessary, or both....*
42 U.S.C.A. § 6973 (West 1984 & Supp.1993) (emphasis added).

3. H.R.Rep. No. 198, 98th Cong., 2d Sess., pt. I, 53 (1983), *reprinted in* 1984 U.S.C.C.A.N. 5576, 5612. The legislative history for the 1984 RCRA Amendments suggests that when Congress added the endangerment provision it did not intend to grant a narrower right of action to citizens than to the Administrator, who is authorized (according to persuasive out-of-circuit case law, discussed *infra*) to bring reimbursement actions. Nothing indicates that Congress intended citizen suits to serve a purpose different from that served by governmental actions. The House Committee on Energy and Commerce explained in its report that citizens have a limited right to sue in endangerment cases "pursuant to the standards of liability established under Section 7003 [42 U.S.C. § 6973, Administrator's right of action]" and only if the Administrator, after receiving notice, fails to file an action. *Id.* "The Committee believes [the] expansion of the citizen suit provision will complement ... the Administrator's efforts to eliminate threats as to public health and the environment, particularly where the Government is unable to take action because of inadequate resources." *Id.*

Still, the legislative history cuts both ways because other language supports the Meghrigs' contention that Congress intended to allow citizens to sue only for injunctions when it added the endangerment provision. The House Committee stated that citizens have a "limited right ... to sue to *abate* an imminent and substantial endangerment." *Id.* (emphasis added).

cause it worded the provisions almost identically, we choose to interpret similarly the relief available under the two provisions. The Eighth Circuit has recognized the Administrator's right to sue under § 6973 for restitution of costs incurred. *See, e.g., Aceto Agric. Chemicals Corp.,* 872 F.2d at 1383 (Administrator may collect reimbursement after government cleaned up contaminated property); *United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726 (8th Cir.1986) (Administrator may collect an equitable award of abatement costs from persons who non-negligently contributed to endangerment), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). The Third Circuit also has stated that "[r]eimbursement could ... be directed against those parties ultimately found to be liable" after the EPA itself funded a diagnostic study of contaminated property. *Price,* 688 F.2d at 214 (holding that district court could have granted the Administrator a preliminary injunction to obtain funding for diagnostic study).

We are not persuaded by the Meghrigs' contention that material differences exist between the substantially identical citizen' suit provisions in § 6972(a)(1)(B) and § 6973, so as to justify affording restitutionary relief only to the Administrator. The Meghrigs focus first on the different notice requirements for filing actions.[4] The Administrator may bring an action "upon receipt of evidence" of the requisite endangerment, and the statute does not preclude actions filed by the Administrator without notice. *See* 42 U.S.C. § 6973(a). On the other hand, a private plaintiff cannot commence an action without giving ninety days' notice to the Administrator, the State, and to any alleged contributor to the endangerment. *See* 42 U.S.C. § 6972(b)(2)(A); *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1159

(9th Cir.1989). Notice by a private plaintiff might encourage certain polluters to abate harmful conduct to obviate an expensive lawsuit. Still, there is no inconsistency between a notice requirement and the recovery of clean-up costs from past polluters.[5] Requiring notice of a citizen suit restitution action still serves certain interests of the EPA and the states by notifying them that endangerment was corrected and that the polluters are being held accountable. Furthermore, even the Administrator must provide immediate notice of hazardous waste endangerment to the appropriate local governmental agencies, *see* 42 U.S.C. § 6973(c), and no courts have treated this notice requirement as a basis for refusing to allow governmental restitution actions.

The Meghrigs also argue that the lack of a limitations period for RCRA citizen suits is evidence of the unavailability of reimbursement actions under RCRA. They argue that it would be problematic for us to conclude that private citizens can file suit many years after they complete clean-up of once-imminent endangerment. Congress provided a limitations period in other statutes, such as the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), when it expressly authorized actions to recover response costs, 42 U.S.C. § 9612(d)(1) (West 1986 & Supp.1993) (claim to recover clean-up costs must be made within six years after the completion of all response action). Instead, in RCRA, Congress provided that private plaintiffs retain the right "to seek any other relief" available "under any statute or common law...." *See* 42 U.S.C. § 6972(f). We do not see this as a problem. By applying equitable defenses such as laches, courts can alleviate any unfairness that might be created by the lack of a limitations period for RCRA citizen suits.

---

4. Compliance with the citizen suit notice requirement, *infra,* is not an issue on appeal.

5. Section 6972(a)(1)(B) permits private actions against persons who in the past contributed to current endangerment, even though they no longer engage in conduct that requires abatement. Because § 6972(a)(1)(B) applies retroactively in some cases, we do not import into our analysis the Supreme Court's discussion in *Gwaltney* on the significance of a notice require-

ment, 484 U.S. at 60–61, 108 S.Ct. at 383 (rejecting a statutory interpretation that would render notice gratuitous because one purpose of notice is to give an alleged violator an opportunity to bring itself into compliance with federal requirements and thereby render unnecessary a citizen suit). As explained *supra* in note 1, the *Gwaltney* case concerned a different statute which only applies to persons alleged to be *currently* in violation of federal obligations.

We have found no principled reason to distinguish between the relief available to the Administrator and that available to private plaintiffs under the virtually identical statutory provisions. Nor are we persuaded by the case law cited by the Meghrigs. Some circuit courts have held that citizens cannot bring reimbursement actions because RCRA authorizes only preventive, rather than compensatory relief. *See Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir.1985) (refusing to imply a private right of action for damages); *Environmental Defense Fund, Inc. v. Lamphier*, 714 F.2d 331, 337 (4th Cir.1983) (affirming award of injunctive relief because plaintiffs were "acting as private attorneys general rather than pursuing a private remedy [for damages]"). These decisions are inapposite because they do not address private actions like KFC's action, brought under § 6972(a)(1)(B). Rather, they concern actions brought under the predecessor to § 6972(a)(1)(A), formerly 42 U.S.C. § 6972(a), which authorized actions to "enforce" a requirement against any person alleged to be currently "in violation" of the requirement. *Cf.* § 6972(a)(1)(B) (allowing actions against any contributor, past or present, to an imminent and substantial endangerment).

Furthermore, we disapprove of the reasoning used by district courts that have dismissed complaints brought under § 6972(a)(1)(B) to the extent the plaintiffs sought reimbursement of clean-up costs. *See Kaufman and Broad–South Bay v. Unisys Corp.*, 822 F.Supp. 1468 (N.D.Cal.1993) (refusing to follow cases interpreting § 6973 to afford a restitution remedy to the Administrator, and relying on *Walls,* and *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441 (E.D.N.Y.1990)); *Commerce Holding Co.,* 749 F.Supp. at 445 (Although plaintiff characterized complaint as a request for "equitable relief in the form of [clean-up cost] reimbursement," court construed it as one for damages, stating that the complaint failed even if treated as a request for equitable relief because the plaintiff "would be the direct beneficiary of the substantive relief."). Because we choose to follow the Eighth Circuit's rule that the Administrator may sue for equitable restitution of costs, we now allow such suits by private plaintiffs under § 6972(a)(1)(B).

It would be unfair and poor public policy to interpret § 6972(a)(1)(B) as barring restitution actions. By doing so, we would make the citizen suit remedy meaningless in most cases for the very citizens who most deserve the remedy, namely innocent citizens, like KFC, who have a financial stake in the contaminated property as well as potential and actual clean-up liability. As in this case, the government often orders innocent parties, so-called "responsible parties" under the statute, to remedy discovered contamination on their property even though they did not cause the contamination or have any ties to the property when the contamination occurred. When the government orders clean-up, the innocent citizen must respond expeditiously to the order. There is no time to sue for "other equitable relief" in the form of a mandatory clean-up injunction against past polluters who may or may not still be on the scene.

CERCLA and state law do not provide an adequate substitute source of relief for these innocent citizens.[6] In practice, an interpretation of § 6972(a)(1)(B) that afforded only injunctive relief, not compensation, would make the remedy available only to concerned

---

**6.** KFC has no remedy under CERCLA because CERCLA's petroleum exclusion covers refined petroleum products such as gasoline and therefore bars a lawsuit to recover response costs occasioned by its release. *See Cose v. Getty Oil Co.,* 4 F.3d 700, 704 (9th Cir.1993) (CERCLA excludes refined petroleum from its definition of "hazardous substance"); *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,* 881 F.2d 801, 810 (9th Cir.1989) (same). Due to a similar petroleum exclusion in California's Hazardous Substance Account Act, KFC also has no statutory state law remedy. *KFC Western, Inc. v. Me-* *ghrig,* 23 Cal.App.4th 1167, 28 Cal.Rptr.2d 676, 682 (1994). KFC might be able to state common law claims for private continuing nuisance and continuing trespass based on the Meghrigs' allegedly tortious contamination of the soil. *See id.,* 28 Cal.Rptr.2d at 685 (reversing dismissal and remanding to allow KFC to amend its complaint). Even though causes of action for nuisance, trespass, and potential negligence are available to plaintiffs such as KFC, tort remedies are generally inadequate because of the difficulties of proof and attendant court delays.

outsiders, who can never be held responsible for environmental clean-up. We would foreclose a RCRA remedy for the innocent buyers who clean up contaminated property.

In fact, it is even more important for private citizens, as compared to the EPA Administrator, to have a restitutionary remedy under RCRA. A private citizen often cannot control the timing of clean-up actions but, rather, must clean the contaminated property whenever the government obtains an appropriate order. Even the innocent private party, like KFC, who purchases already-contaminated property, often must clean the property immediately and recover secondarily from the actual polluter. The Administrator, on the other hand, can control the timing of clean-up actions and impose the clean-up burden on the polluters or other "responsible parties" in the first instance. The right to reimbursement becomes important to the Administrator only when contamination requires prompt attention, which is always the case for private citizens who are ordered to remedy contamination. As the Third Circuit has recognized, public policy concerns might favor allowing a plaintiff to clean contaminated property first and seek reimbursement later. *See Price*, 688 F.2d at 214 ("Prompt preventive action [is] the most important consideration."). We therefore hold that § 6972(a)(1)(B) entitles KFC to bring a restitution action. REVERSED AND REMANDED.

BRUNETTI, Circuit Judge, dissenting:

Because I believe that RCRA § 7002, 42 U.S.C. § 6972(a)(1)(B), does not contemplate actions for restitution when there is no "imminent and substantial endangerment" at the time of suit, I must dissent from the majority's opinion.

The majority's main argument is that because the Eighth Circuit allowed the administrator to bring an action for restitution under *§ 6973*, private citizens should be permitted to bring actions for restitution under

§ 6972(a)(1)(B) since those two sections are worded virtually identically. In *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989) (emphasis in original), the Eighth Circuit held that "RCRA's 'imminent and substantial endangerment' language does not require the EPA to file and prosecute its RCRA action *while* the endangerment exists." The court found that "in the context of a reimbursement action, this would be an 'absurd and unnecessary' requirement. The endangerment language is plainly intended by Congress to limit the reach of RCRA to sites where the potential for harm is great." *Id.* at 1383. The court concluded that requiring an "imminent and substantial endangerment" at the time of suit would defeat RCRA's purpose to "give broad authority to the courts to grant all relief necessary to ensure complete protection of the public health and the environment." *Id.* (quotations omitted).

The Eighth Circuit's decision *assumes* without deciding that RCRA § 6973 provides for reimbursement actions. Looking at the two issues presented in the instant action makes this clear. Those two issues are: (1) whether RCRA requires an "imminent and substantial endangerment" at the time of filing suit, and (2) whether § 6972 is limited to injunctive, rather than restitutionary, relief. Although the two issues are intertwined, allowing an action for restitution *after* a site has been cleaned up requires an affirmative answer to both questions. If the answer to either question is no, then the answer to the other question should also be no. Instead of addressing both questions under the statute, the Eighth Circuit assumed that RCRA permits reimbursement actions.

The majority adopts the Eighth Circuit's decision in *Aceto* without discussing its assumption that § 6973 permits reimbursement actions. This approach undermines the plain language of § 6972(a)(1)(B). Therefore, I disagree with the majority's unquestioning adoption of *Aceto*.[1]

1. I agree with the majority that § 6973 and § 6972(a)(1)(B), which are worded identically, should be interpreted the same. The legislative history supports this conclusion. *See* H.R.Rep. No. 198, 98th Cong., 2d Sess. 53 (1984), reprint-

ed in; 1984 U.S.C.C.A.N. 5576, 5612, (citizens have right to sue "pursuant to the standards of liability established under Section 7003 [42 U.S.C. § 6973]"). However, because *Aceto* does not address the issue of reimbursement, I do not

The majority relies on the language in § 6972(a)(1)(B), allowing the district court to "restrain any person ... [or] order such person to take *such other action as may be necessary*, or both ...," to conclude that actions for reimbursement are contemplated by the statute. The majority finds KFC's action for restitution permissible, because it concludes that the language, "such other action as may be necessary," allows the district court to award whatever relief it deems necessary.

I disagree, however, because I believe that the language, "such other action as may be necessary," does not contemplate actions for reimbursement. The legislative history suggests that reimbursement actions are not permitted and that an "imminent and substantial endangerment" must exist at the time of filing suit. The House Committee stated that citizens have "a limited right under Section 7002 to sue to *abate* an imminent and substantial endangerment." H.R.Rep. No. 198, 98th Cong., 2d Sess. 53 (1984), *reprinted in*, 1984 U.S.C.C.A.N. 5576, 5612 (emphasis added). It also explains the primary goal of § 6972(a)(1)(B) as "the *prompt abatement* of imminent and substantial endangerments." *Id.* (emphasis added). Therefore, the majority's decision contravenes the plain language of the statute and the legislative history.

As to the "imminent and substantial endangerment requirement," the language of the statute suggests that it must exist at the time the private citizen files suit. Section 6972(a)(1)(B) allows suit against "any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which *may present an imminent and substantial endangerment to health or the environment.*" This unambiguous language requires that the endangerment must be occurring at the time of filing suit. Only if the statute had read "may or *may have* presented" would it have implied that § 6972(a)(1)(B) permits reimburse-

ment actions for an endangerment that someone had already cleaned up.

Moreover, the notice requirement under § 6972 supports the requirement that an "imminent and substantial endangerment" must be present at the time of filing suit. Under § 6972(b)(2)(A)(i), a private citizen seeking to file suit under § 6972(a)(1)(B) must give notice to the administrator and cannot file suit for 90 days after giving such notice. The purpose of this notice requirement is to give the administrator the opportunity to bring suit itself, since under § 6972(b)(2)(B), a private citizen cannot bring suit if the administrator has initiated its own suit. Thus, the notice requirement and the fact that the administrator has the first and exclusive opportunity to bring suit suggest that § 6972 does not permit reimbursement actions and requires an "imminent and substantial endangerment" at the time of filing suit.

The majority argues that "there is no inconsistency between a notice requirement and recovery of clean-up costs from past polluters." See Opinion at 522. It finds that notice in a reimbursement action "still serves certain interests of the EPA and the states by notifying them that endangerment was corrected and that the polluters are being held accountable." *Id.* However, the majority stretches the effects of the notice requirement too far, since all notice according to the majority's policy rationales really accomplishes is informing the EPA that *certain alleged polluters are being sued by a private citizen.* In addition, the majority states that "the Administrator must provide immediate notice of hazardous waste endangerment to the appropriate local governmental agencies, *see* 42 U.S.C. § 6973(c), and no courts have treated this notice requirement as a basis for refusing to allow governmental restitution actions." *See* Opinion at 522. However, this rationale is inapposite, since the purpose of the notice requirement in § 6972(a)(1)(B) is to allow the administrator to bring suit instead of the private citizen. *See* H.R.Rep. No. 198, 98th Cong., 2d Sess. 53 (1984), *re-*

believe that the majority should rely on it to include actions for restitution within the scope of

§ 6972(a)(1)(B).

*printed in* 1984 U.S.C.C.A.N. 5576, 5612 (The private citizens' right to sue "can only be exercised if the Administrator (following notice of the intended litigation) fails to file an action under 7003."). In contrast, the purpose of the notice requirement in § 6973(c) is not to have the local government agencies bring suit before the administrator. Thus, I believe that the majority uses faulty reasoning to obfuscate the fact that the notice requirement for private citizens shows that § 6792(a)(1)(B) does not permit reimbursement actions and requires an "imminent and substantial endangerment" at the time of filing suit.

The majority also dismisses without support the fact that RCRA lacks any statute of limitations for actions under § 6972(a)(1)(B). Because no statute of limitations exists under § 6972(a)(1)(B), if reimbursement actions are allowed, private citizens, like the KFC owners in this case, can bring suit against past contributors many years after cleaning up the contamination. This case is a prime example. The KFC owners brought the property from the Meghrigs in 1975. KFC did not discover the contamination until October 1988. KFC cleaned up the property in 1989. Then in June 1990, it asked the Meghrigs to reimburse its costs. Not until 1992 did KFC bring suit under RCRA. This course of events illustrates the problem that if reimbursement actions are permitted, private citizens will be able to sue past contributors many years after the contamination and clean-up. Thus, the lack of a statute of limitations supports the fact that § 6972(a)(1)(B) does not contemplate reimbursement actions when there is no "imminent and substantial endangerment."

The majority recognizes the lack of limitations period and attempts to reconstruct Congressional intent to conclude that Congress did not intend for RCRA to have a statute of limitations. It notes that "Congress provided a limitations period in other statutes such as [CERCLA] when it expressly authorized actions to recover response costs...." *See* Opinion at 522. It uses this fact to conclude that "[i]nstead, in RCRA Congress provided that private plaintiffs retain the right 'to seek any other relief' avail-

able 'under any statute or common law' [under § 6972(f)]." This conclusion is illogical—this is not an "instead" and does not indicate that Congress chose a statute of limitations period for CERCLA but not for RCRA. As the majority concedes, CERCLA included a statute of limitations "when it *expressly* authorized actions to recover response costs." *Id.* (emphasis added). This does not imply that because Congress included no statute of limitations in § 6972(a)(1)(B), it provided for reimbursement actions brought by private citizens at any time, unless barred by laches. *Id.* In fact, the lack of limitations period in RCRA in contrast to the limitations period in CERCLA and the express authorization for recovery of response costs suggests that Congress did not contemplate reimbursement actions in RCRA.

Furthermore, the majority finds support in § 6972(f), which provides that

[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or *to seek any other relief* (including relief against the Administrator or a state agency).

§ 6972(f) (emphasis added). This section does not limit the type of relief available; however, it in no way suggests that a private citizen has a cause of action *under RCRA* for reimbursement of clean-up costs from a prior "imminent and substantial endangerment." It simply gives a person the right to bring any claim *allowable* under state or federal law.

The majority then states that it has "found no principled reason to distinguish between the relief available to the Administrator and that available to private plaintiffs under the virtually identical statutory provisions." *See* Opinion at 523. However, other than the Eighth's Circuit's decision in *Aceto,* which assumes reimbursement actions are permissible, the majority has offered no support for its conclusion that an "imminent and substantial endangerment" need not exist at the time of filing suit.

The majority's citation to *United States v. Price*, 688 F.2d. 204 (3d Cir.1982) is wholly unpersuasive. In *Price*, the court did state that in the case before it "[p]rompt preventive action was the most important consideration. Reimbursement could thereafter be directed against those parties ultimately found to be liable." *Id.* at 214. However, the court did not state that reimbursement would be available under RCRA § 6973. In addition, the court also stated that RCRA "authorizes the clean-up of a site, even a dormant one, if that action is necessary to abate a *present* threat to the public health or the environment." *Id.* (emphasis added). It also cited the Eckhardt Report which describes § 6973:

> The section's broad authority to "take such other actions as may be necessary" includes *both short- and long-term injunctive relief,* ranging from the construction of dikes to the adoption of certain treatment technologies, upgrading of disposal facilities, and removal and incineration. Imminence in this section applies to the nature of the threat rather than identification of the time when the endangerment initially arose. The section, therefore, may be used for events which took place at some time in the past but which *continue to present a threat to the public health or the environment.*

*Id.* at 213. Therefore, *Price* does not support suits under § 6973 for reimbursement when no "imminent and substantial endangerment" exists at the time of filing.

The majority also summarily rejects district court cases which have dismissed cases for reimbursement under § 6972(a)(1)(B). *See Kaufman and Broad–South Bay v. Unisys Corp.,* 822 F.Supp. 1468, 1477 (N.D.Cal. 1993) ("While injunctive relief is available under § 6972(a)(1)(B), the statute does not provide a private action for damages. Nor should one be implied.... [Although the Eighth Circuit allowed a reimbursement action under § 6973, other] cases persuasively argue against implying a private remedy for damages or restitution."); *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441 (E.D.N.Y.1990) (injunctive relief available under § 6972(a)(1)(B) not damages and court

will not imply right to private action for damages). Although these case are more directly on point because they interpret § 6972(a)(1)(B), the statute at issue in this case, the majority dismisses them and chooses to follow *Aceto* from the Eighth Circuit which involved § 6973.

The majority also finds *Walls v. Waste Resource Corp.,* 761 F.2d 311 (6th Cir.1985), and *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331 (4th Cir.1983), unpersuasive because they addressed actions brought under the predecessor to § 6972(a)(1)(A), "which authorized actions to 'enforce' a requirement against any person alleged to be currently 'in violation' of the requirement." *See* Opinion at 523. While the majority is correct that these cases did interpret another subsequently amended statute, it fails to recognize that the main difference between the prior statute and § 6972(a)(1)(B), the statute at issue in this case, is that under § 6972(a)(1)(B), private citizens can sue *past* contributors. This allows private citizens to require past contributors to clean-up sites, even if those past contributors are no longer contributing to the "imminent and substantial endangerment." It does not, however, imply that private citizens can sue past contributors for reimbursement. Thus, while *Walls* and *Environmental Defense Fund* do not directly support the fact that § 6972(a)(1)(B) does not contemplate reimbursement actions, the fact that courts under § 6972(a) (now amended and § 6972(a)(1)(A)) would not imply private rights of action for damages indirectly could lend credence to the theory that those actions should not be permitted under either § 6972(a)(1)(B) or § 6973.

The majority's final arguments in favor of reimbursement actions under § 6972(a)(1)(B) are based on public policy. It recognizes that private citizens may not have time to bring actions for a mandatory clean-up injunction against past polluters before cleaning up as ordered by the government. This may be true, but we should not make a legislative determination that because some private citizens will not have time to bring suit before cleaning up as ordered, reimbursement actions should be implied under

§ 6972(a)(1)(B). In addition, there is nothing in the record in this case that indicates that KFC could not bring suit against the Meghrigs before clean-up at the time they discovered the contamination. The majority speculates—theoretically, one could say just as easily that had KFC provided the EPA with notice at the time it discovered the contamination, the EPA would have brought suit against the Meghrigs and ordered them to clean-up. Finally, the majority's policy considerations do not apply at all to § 6973. While normally policy considerations need not support another statutory provision, in this case, in which the majority heavily relies on the Eighth Circuit's decision to allow the administrator to sue for reimbursement under § 6973, it seems that some of the majority's policy concerns should apply to § 6973 as well, especially since the Eighth Circuit simply assumes that reimbursement actions are permitted under § 6973.

In conclusion, I understand the majority's desire to hold contaminators accountable. In this case, however, in which KFC failed to bring suit before clean-up, RCRA does not offer them a remedy. It is unfortunate in a case such as this that neither CERCLA nor state statutory schemes provide relief for KFC because the substance found at the site was petroleum. But, this is an issue that Congress should address. Maybe restitutionary actions under RCRA are necessary and practical, but it is not something that Congress has thus far enacted into legislation.

I would affirm the district court's dismissal of the amended complaint.