62 F.3d 1092
 41 ERC 1033, 64 USLW 2122, 25 Envtl.
L. Rep. 21,450
 J. Richard FURRER; Margaret L. Furrer, Appellants,
v.
Donald F. BROWN; Dorothy J. Brown; Louis W. Fagas;
Geraldine J. Fagas; Shell Oil Company, Appellees.
Unknown Does, 1-100, Defendant.
State of Missouri; Bi-State Development Agency; United
States of America, Amicus Curiae.
 No. 94-3281.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1995.
Decided Aug. 15, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Oct.
30, 1995.*
 
 Eugene Schmittgens, Jr., St. Louis, MO, argued, for appellant.
 John S. Metzger, St. Louis, MO, argued (Thomas M. Blumenthal, St. Louis, MO, on the brief of appellees Donald & Dorothy Brown; Thomas B. Weaver and Carol A. Platt, St. Louis, MO, with John S. Metzger on the brief of appellee Shell Oil Co.; and John T. Yarbrough and Tim A. McGuire, St. Louis, Missouri, on the brief of appellees Louis W. and Geraldine J. Fagas), for appellees.
 Before FAGG and BOWMAN, Circuit Judges, and BENNETT,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 J. Richard Furrer and Margaret L. Furrer appeal from an order of the District Court[1] granting the separate motions to dismiss filed by Donald F. Brown, Dorothy J. Brown, Louis W. Fagas, and Geraldine Fagas, and by Shell Oil Company, on the Furrers' claim brought under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. Secs. 6901-6987 (1988 & Supp. V 1993), to recover costs incurred in cleaning up soil contamination caused by leaking underground gasoline storage tanks located at the property known as 4701 Gravois Avenue, St. Louis, Missouri. We affirm.
 
 I.
 
 2
 The Furrers own the Gravois Avenue property. The Browns and Fagases were owners of the site at times before the Furrers acquired the property, and Shell Oil Company at one time was lessee of the property and operated a service station there. The Furrers became aware in 1991 that the property was contaminated by petroleum, and they "were ordered to remediate the contamination by the Missouri Department of Natural Resources" (MoDNR). Complaint at p 16, Furrer v. Brown, No. 4:93-CV-2276 (E.D.Mo. filed Oct. 22, 1993).
 
 
 3
 The Furrers sought to recover their remediation costs from the Browns, the Fagases, and Shell Oil, appellees here, alleging federal jurisdiction pursuant to 42 U.S.C. Sec. 6972 (1988). Besides a RCRA count, the Furrers asserted three state common law theories of recovery. The District Court granted the appellees' motions to dismiss, holding that the court did not have subject matter jurisdiction over the federal claim, and declining to exercise supplemental jurisdiction over the state law claims. The Furrers appeal. Because the dismissal for lack of subject matter jurisdiction was granted without reference to matters outside the pleadings, the appeal presents a question of law that we review de novo.[2] See Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269, 1273 (8th Cir.1994).
 
 II.
 
 4
 The statute under which the Furrers invoked federal court jurisdiction is RCRA's citizen suit provision, and reads in pertinent part as follows:
 
 
 5
 Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf--
 
 
 6
 . . . . .
 
 
 7
 (B) against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment;
 
 
 8
 ....
 
 
 9
 ... The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce [permits and other such requirements], to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste ..., to order such person to take such other action as may be necessary, or both....
 
 
 10
 42 U.S.C. Sec. 6972(a)(1)(B) (1988) (emphasis added).
 
 
 11
 Section 6972 gives the federal courts subject matter jurisdiction to hear citizen suits where specific equitable remedies are sought: prohibitory or mandatory injunctive relief "to enforce," "to restrain," and "to order ... other action ... necessary." The statute does not give the district courts express authority in citizen suits to award money judgments for costs incurred in cleaning up contaminated sites. Thus, if such a remedy is to be available, we must find either that Congress, by authorizing the district court "to order ... such other action as may be necessary," id., implicitly created such a remedy, or that the "cause of action ... may have become a part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO, 451 U.S. 77, 90, 101 S.Ct. 1571, 1579, 67 L.Ed.2d 750 (1981). Federal common law is not an issue in this case,[3] and as explained in the discussion that follows we reject Sec. 6972 as a source of federal jurisdiction for the Furrers' cause of action.
 
 
 12
 When considering the possibility that it was Congress's intent to authorize a monetary remedy for private citizens when it enacted Sec. 6972, or, more precisely, when it amended the statute in 1984,[4] we are guided by the teachings of the Supreme Court. The "familiar test" of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which places "the burden ... on [the Furrers] to demonstrate that Congress intended to make a private remedy available" such as the one the Furrers seek,[5] Suter v. Artist M., 503 U.S. 347, 363, 112 S.Ct. 1360, 1369, 118 L.Ed.2d 1 (1992), sets out four factors relevant to the search for an implied cause of action. First, we look at the statute to determine if the Furrers are in the class for whose benefit the statute was enacted, and then at the legislative history to see if it explicitly or implicitly shows an intent to create or deny the cause of action. Cort, 422 U.S. at 78, 95 S.Ct. at 2087. Third, we examine the proposed remedy in the context of the purpose of the statutory scheme, and finally we consider whether the cause of action is one traditionally a matter of state law, so that inferring a federal remedy would be inappropriate. Id.
 
 A.
 
 13
 As discussed above, Sec. 6972 on its face does not provide for the recovery of remediation costs by way of a citizen suit.[6] Nevertheless, Congress's failure to include express authority for the district court to award monetary relief, "although significant, is not dispositive if, among other things, the language of the statutes indicates that they were enacted for the special benefit of a class of which [the plaintiff] is a member." Northwest Airlines, 451 U.S. at 91-92, 101 S.Ct. at 1580 (footnote omitted). Clearly, the Furrers as "citizens" are among the "any persons" who are authorized to bring suit for enforcement of RCRA's permits and regulations. The "benefit" of RCRA, however, inures to all citizens of the United States, and Sec. 6972 confers upon each of those beneficiaries the right to bring suit in the federal courts to compel enforcement of RCRA's provisions. Neither RCRA generally nor Sec. 6972 specifically was enacted for the "special benefit" of those owners of property who pay to remediate soil contamination that has resulted from leaking underground gasoline storage tanks and for which they claim no responsibility. In fact, a persuasive argument can be made that the Furrers are in a class of persons that RCRA and Sec. 6972 are directed against--the owners of a storage facility where hazardous waste has presented an imminent and substantial endangerment. See id. at 92, 101 S.Ct. at 1580 (declining to infer cause of action for employer to seek contribution from union under the Equal Pay Act and Title VII where "both statutes are expressly directed against employers"). We conclude that the language of Sec. 6972--benefiting the citizenry of the United States generally and endowing the federal courts with subject matter jurisdiction for a suit brought by "any person"--demonstrates that it was not enacted for the "special benefit" of those in the Furrers' circumstances.
 
 
 14
 The Furrers argue that Congress, by giving the federal courts seemingly broad jurisdiction "to order [parties who have contributed to the contamination] to take such other action as may be necessary," intended a person who has incurred remediation costs to have a cause of action under Sec. 6972 to recover those costs from the responsible parties. The Furrers characterize this recovery as "equitable restitution" and ask that we find it to be a remedy within the scope of the statute.
 
 
 15
 We think the Furrers read too much into the phrase "to take such other action as may be necessary." Giving the language a natural, unstrained reading, it appears to authorize federal courts to grant mandatory injunctive relief, that is, to order the responsible party to take action: to investigate a site, to remediate a site, and so forth. We do not think that "such other action as may be necessary" contemplates the payment of money to a party who already has cleaned up a contaminated site. Similarly, jurisdiction "to enforce" or "to restrain" does not encompass the authority to award monetary relief. "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 773 n. 24, 101 S.Ct. 1451, 1462 n. 24, 67 L.Ed.2d 662 (1981) (quoting National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)); accord Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) ("Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").
 
 
 16
 As the Supreme Court repeatedly has said, we are to begin with "the statutory language, particularly ... the provisions made therein for enforcement and relief" when determining "whether Congress intended to create a private right of action under a federal statute without saying so explicitly." Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); see also Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), and cases cited therein. The Furrers argue that the authority "to order ... such other action" must include the full range of equitable remedies, including the restitution they claim. Assuming without deciding that it is equitable restitution that the Furrers seek (it looks to us suspiciously like money damages), we think that even a cursory look at federal environmental legislation demonstrates that "Congress knows how to define a right to contribution" in this area of the law. Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 n. 11, 101 S.Ct. 2061, 2066 n. 11, 68 L.Ed.2d 500 (1981). The examples that follow support our conclusion that Congress could have written Sec. 6972 to include the remedy the Furrers seek, having clearly provided for it elsewhere in federal environmental law, and deliberately did not do so in this instance.
 
 
 17
 Congress demonstrated its faculty for writing a statute to include a cause of action for recovery of cleanup costs when it drafted RCRA. Within that legislation, Congress provided that the administrator of the Environmental Protection Agency (EPA) or a state could recover from the owner or operator of an underground storage tank the costs incurred "for undertaking corrective action or enforcement action with respect to the release of petroleum from" such a tank. 42 U.S.C. Sec. 6991b(h)(6)(A) (1988). Notably, Congress authorized no such recovery for present owners and operators against previous owners and operators who are responsible for petroleum leaks from underground storage tanks.[7]
 
 
 18
 Under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-9675 (1988 & Supp. V 1993), a later-enacted major federal environmental act, Congress provided that "[a]ny person may seek contribution from any other person who is liable or potentially liable" for response costs. 42 U.S.C. Sec. 9613(f)(1) (1988). This cause of action for contribution is in addition to CERCLA's citizen suit statute, which, much like the RCRA citizen suit statute, provides that any person may bring a civil action in federal court and gives the district court authority to enforce CERCLA regulations and "to order such action as may be necessary to correct the violation" of a CERCLA standard or requirement. Id. Sec. 9659(c) (1988). Congress, knowing its CERCLA citizen suit provision did not extend the available remedies to include a cause of action for monetary recovery from other responsible parties, despite the broad "other action" language (which is also found in the RCRA citizen suit provision), and wishing to allow such a remedy in certain cases, enacted Sec. 9613(f)(1) to provide expressly for contribution.[8]
 
 
 19
 Section 6972 is specific about the relief available under the statute. By its language, the statute authorizes injunctive relief, whether prohibitory (to stop generating hazardous waste) or mandatory (to comply with permits or regulations or to clean up hazardous waste). In other federal environmental legislation, Congress authorized suit for similar injunctive relief, but then specifically gave federal courts authority to hear claims for monetary recovery as well. "The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." Northwest Airlines, 451 U.S. at 93-94, 101 S.Ct. at 1581-82.
 
 B.
 
 20
 Although we are tempted to regard our discussion under Part IIA, supra, as dispositive of this case, fidelity to Cort requires that we next look at the legislative history of the 1984 amendment to Sec. 6972 (clarifying the remedies available in citizen suits, see supra note 4) to see if we can discern any congressional intent regarding the remedy the Furrers seek. "Even settled rules of statutory construction could yield, of course, to persuasive evidence of a contrary legislative intent." Transamerica Mortgage Advisors, 444 U.S. at 20, 100 S.Ct. at 247. But as is to be expected, because the statute did not "expressly create or deny" the remedy the Furrers seek, the legislative history is "equally silent or ambiguous on the question." Northwest Airlines, 451 U.S. at 94, 101 S.Ct. at 1581 (quoting Cannon v. University of Chicago, 441 U.S. 677, 694, 99 S.Ct. 1946, 1955, 60 L.Ed.2d 560 (1979)). While there is no indication in the legislative history that Congress intended to deny the recovery of cleanup costs under Sec. 6972, by the same token there is no evidence that Congress intended to create such a remedy, and "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." Touche Ross, 442 U.S. at 571, 99 S.Ct. at 2486.
 
 C.
 
 21
 Finding no congressional intent to create a private cause of action for the recovery of cleanup costs manifest in either Sec. 6972 or its legislative history, we might, and probably should, end the inquiry here. See California v. Sierra Club, 451 U.S. 287, 298, 101 S.Ct. 1775, 1780, 68 L.Ed.2d 101 (1981) (noting that the last two Cort factors "are only of relevance if the first two factors give indication of congressional intent to create the remedy"). But out of an abundance of caution we nevertheless have considered the third factor, the underlying purpose of the statute and the structure of the federal environmental statutory scheme, and we conclude that the remedy sought is not "necessary to make effective the congressional purpose" of Sec. 6972. Cort, 422 U.S. at 84, 95 S.Ct. at 2090 (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964)).
 
 
 22
 RCRA itself states that the objectives of the Act "are to promote the protection of health and the environment and to conserve valuable material and energy resources," and then sets forth eleven routes to that goal, none of which relate specifically to the citizen suit provision. 42 U.S.C. Sec. 6902(a) (1988). The "national policy" statement accompanying the Act addresses only the reduction or elimination of "the generation of hazardous waste ... as expeditiously as possible," and the appropriate treatment, storage, or disposal of "[w]aste that is nevertheless generated," but does not speak specifically to already contaminated property or its remediation. Id. Sec. 6902(b). The citizen suit provision itself "permits individuals to commence an action in district court to enforce waste disposal regulations promulgated under" RCRA. Hallstrom v. Tillamook County, 493 U.S. 20, 22, 110 S.Ct. 304, 306, 107 L.Ed.2d 237 (1989) (emphasis added). The overriding purpose of RCRA is clear: to prevent generation of hazardous waste in the first place, and to dispose of and treat properly that which is produced. In other words, RCRA's goal is to prevent the creation of hazardous waste sites, rather than to promote the cleanup of existing sites.
 
 
 23
 Looking at Sec. 6972, we see that, notwithstanding the inclusion of this citizen suit provision in RCRA, the statute has provisions whose obvious goal it is to forestall citizen suits so that they become available only as a last resort. The Sec. 6972 plaintiff must give sixty days notice to the EPA, the state, and the alleged violator before bringing suit. 42 U.S.C. Sec. 6972(b)(1)(A) (1988). The purpose of the notice requirement is to "allow[ ] Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits," and to give the reputed violator the opportunity to correct his behavior so that it conforms with RCRA. Hallstrom, 493 U.S. at 29, 110 S.Ct. at 310. Citizen suits are further discouraged by the very statute that authorizes them, because a person may not commence a Sec. 6972 suit if the EPA or the state has initiated and is "diligently prosecuting" an enforcement suit (although a citizen may intervene in such a suit in federal court). 42 U.S.C. Sec. 6972(b)(1)(B) (1988). It is apparent that, while Congress intended to allow citizen suits in order to foster compliance with RCRA's regulations, it wrote Sec. 6972 to discourage citizen suits when compliance is at hand.
 
 
 24
 The legislative history of the 1984 amendment to Sec. 6972 supports our conclusion that Congress intended the section to further the enforcement of RCRA regulations, that is, the regulation of hazardous waste, and did not intend to give citizens a cause of action for recovery of costs incurred for the cleanup of hazardous waste sites when regulation has failed. "[T]he legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." Hallstrom, 493 U.S. at 29, 110 S.Ct. at 310.
 
 
 25
 According to the House Report, the 1984 amendment "confers on citizens a limited right under [Sec. 6972] to sue to abate an imminent and substantial endangerment." H.R.Rep. No. 198, 98th Cong., 2d Sess., pt. 1, at 53 (1984), reprinted in 1984 U.S.C.C.A.N. 5576, 5612 (emphasis added). This language makes it clear that we should not be inclined to add to the list of remedies found in the statute.[9] A cause of action "to abate" is a suit for an injunction--whether prohibitory to stop the generation of hazardous waste or mandatory to compel compliance with RCRA regulations. There is no indication that Sec. 6972 as amended was intended to expand citizens' remedies to include the recovery of cleanup costs.
 
 
 26
 The comprehensive structure of federal environmental legislation in general, as discussed supra, at 1095-96, also cautions against inferring a monetary remedy under Sec. 6972. Numerous statutes that specifically authorize actions with such a remedy are already in place, further evidencing that the purpose of Sec. 6972 was something else altogether.
 
 
 27
 The Furrers contend that allowing a cause of action to recover cleanup costs from those who have contributed or are contributing to contamination effectuates the purpose of RCRA and is an appropriate remedy within the rubric of Sec. 6972's "other action ... necessary." As the argument goes, citizens like the Furrers will be encouraged to abate contamination voluntarily, because they then can sue under Sec. 6972 to recover remediation costs for which they are not equitably responsible.
 
 
 28
 We cannot deny that the Furrers' argument has a considerable surface appeal. We are mindful, however, that abatement of a hazardous waste spill can be ordered in diverse circumstances by a variety of federal and state authorities, and that liability for the remediation of contaminated property attaches, without regard to fault, to the then owner of the property. Thus, regardless of their ability to bring suit to recover costs expended in remediating a contaminated site, owners will clean up the waste--or they will be sued and forced to do so--and the goal of abatement will be served. The Furrers have alleged that they cleaned up the Gravois Avenue property because they were ordered to do so by the MoDNR, not because they knew they could recover their costs from the appellees. In the circumstances, we think it disingenuous of the Furrers to suggest that the remediation of the Gravois Avenue site might have been motivated by a federal remedy to recover cleanup costs, especially given the doubtful availability of that remedy. And as a general proposition we believe that it is the threat of criminal or civil sanctions that hasten a cleanup such as the one undertaken by the Furrers, not a belief that, under RCRA, remediation costs can be recovered from previous owners or users of the property.
 
 
 29
 In conclusion, we cannot say that the purposes of environmental law and of Sec. 6972 would be served by providing for a monetary remedy in a citizen suit under Sec. 6972. Thus the third Cort factor provides no assistance to the Furrers.
 
 D.
 
 30
 We come now to the fourth Cort factor, which focuses on the relationship between federal law and state law and asks whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States." Cort, 422 U.S. at 78, 95 S.Ct. at 2087. If so, it would be inappropriate to find an implied federal cause of action. Having concluded, based on our analysis of the first three Cort factors, "ones traditionally relied upon in determining legislative intent," Touche Ross, 442 U.S. at 576, 99 S.Ct. at 2489, that Congress did not intend to incorporate within Sec. 6972 an implied remedy for the recovery of cleanup costs, the fourth factor in the inquiry would seem to hold little, if any, significance. See id. at 575, 99 S.Ct. at 2488; California v. Sierra Club, 451 U.S. at 298, 101 S.Ct. at 1780 (stating that the last two Cort factor are irrelevant unless "the first two factors give indication of congressional intent to create the remedy"). Even so, we have considered this final Cort factor and have concluded, notwithstanding that the general subject matter of Sec. 6972 may not be an area primarily of state concern, that this factor, like the others, affords no basis for finding in Sec. 6972 an implied cause of action for the recovery of cleanup costs.
 
 
 31
 Section 6972 has a savings clause, which preserves a person's rights "under any statute or common law ... to seek any other relief." 42 U.S.C. Sec. 6972(f) (1988). The legislative history of the 1984 amendment to Sec. 6972 reflects a debate in the House about the extent to which federal courts should assume jurisdiction over preserved supplemental state law claims. The majority committee report evidences an expectation that, the savings clause notwithstanding, courts will "exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments." H.R.Rep. No. 198, 98th Cong., 2d Sess., pt. 1, at 53 (1984), reprinted in 1984 U.S.C.C.A.N. 5576, 5612. The committee minority wished to strip federal courts of jurisdiction to hear any supplemental state law claims brought with RCRA citizen suits. The minority was concerned that allowing adjudication of state claims with Sec. 6972 suits would unduly burden the federal courts and slow down the primary goal of the statute: the abatement of imminent hazards. "Instead of ending the imminent hazard, federal judges will be trying to decide cumbersome questions of state law nuisance, trespass, and personal and property damage compensation." Id. at 119, reprinted in 1984 U.S.C.C.A.N. at 5635. Clearly all committee members had concerns (although to different degrees) about federal courts losing focus and concentrating on peripheral issues related to state claims--such as apportioning fault so as to award contribution--instead of acting quickly to abate imminent hazards. Given the specific reservation of state remedies in Sec. 6972(f), and given congressional concern that citizen suits not become bogged down in the quest for private state law remedies (such as the recovery of cleanup costs), we think that this is at best a neutral factor and does nothing to advance the case for finding an implied federal cause of action for the recovery of cleanup costs.
 
 E.
 
 32
 In sum, none of the four Cort factors tips the scales in favor of implying in Sec. 6972 a cause of action to recover cleanup costs. In any event, as we intimated above, the Cort analysis no longer involves a balancing of the four factors; they now serve only as "guides to discerning" congressional intent.[10] Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513, 515, 98 L.Ed.2d 512 (1988). "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross, 442 U.S. at 575, 99 S.Ct. at 2488. In none of the factors do we find a basis for imputing to Congress the intent to create in Sec. 6972 an implied private cause of action for the recovery of cleanup costs.
 
 III.
 
 33
 The Furrers commend to us the Ninth Circuit's opinion in KFC Western, Inc. v. Meghrig, 49 F.3d 518 (9th Cir.1995), petition for cert. filed (July 13, 1995) (No. 95-83), and urge that we follow the reasoning of the majority in that case. In a split decision, the court held that Sec. 6972(a)(1)(B) gives the district court jurisdiction over private actions for the recovery of cleanup costs. We think, however, that the court began with a questionable proposition and then mistakenly reached its result in reliance on cases from this Circuit that, when carefully analyzed, do not support the KFC Western decision.
 
 
 34
 In Sec. 6973, entitled "Imminent hazard," Congress has given the EPA administrator this authority:
 
 
 35
 Notwithstanding any other provision of this chapter, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person ... who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation or disposal, to order such person to take such other action as may be necessary, or both.
 
 
 36
 42 U.S.C. Sec. 6973(a) (1988). The KFC Western court summarily states that, "[b]ecause Congress intended that citizen suits be governed by the same standards of liability as governmental actions, and because it worded the provisions almost identically, we choose to interpret similarly the relief available under the two provisions." KFC Western, 49 F.3d at 521-22 (footnote omitted). The only support cited for the first part of that proposition is legislative history that, according to the court, "suggests" that suits under the citizen suit provision and the similar EPA suit provision were intended to parallel one another. According to the court, "[n]othing indicates that Congress intended citizen suits to serve a purpose different from that served by governmental actions." Id. at 521 n. 3. But it is a non sequitur that the remedies available to the respective plaintiffs must be the same.
 
 
 37
 The language in the legislative history upon which the Ninth Circuit (and the Furrers) rely is this: "[The 1984 amendment to Sec. 6972] confers on citizens a limited right under [Sec. 6972] to sue to abate an imminent and substantial endangerment pursuant to the standards of liability established under [Sec. 6973]." H.R.Rep. No. 198, 98th Cong., 2d Sess., pt. 1, at 53 (1984), reprinted in, 1984 U.S.C.C.A.N. 5576, 5612. First of all, this language indicates that the right to sue is conferred on private citizens pursuant to the standards of liability developed under Sec. 6973; it does not say private citizens are entitled to the same remedies that are available to the EPA under Sec. 6973. In addition, it is the right to sue "to abate"--a "limited right" at that--that is conferred pursuant to the standards of liability under Sec. 6972, not any right to recover abatement costs. Even the KFC Western majority recognizes that "the legislative history cuts both ways," KFC Western, 49 F.3d at 521 n. 3, but the court nevertheless relies on it to read Secs. 6972 and 6973 as granting authority to award identical remedies to private plaintiffs and to governmental plaintiffs. From an arguably faulty premise, then, the court goes on to misconstrue two Eighth Circuit opinions involving governmental plaintiffs and to conclude that Sec. 6972 authorizes the recovery of cleanup costs by private plaintiffs. In the two cases from this Circuit upon which the KFC Western court relies, the issue of whether cleanup costs may be recovered in a governmental action under Sec. 6973(a) was never before this Court.
 
 
 38
 In United States v. Northeastern Pharmaceutical & Chemical Co. (NEPACCO ), 810 F.2d 726 (8th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), the United States in a cross-appeal challenged the district court's refusal to award "response costs" under Sec. 6973(a), a decision made because the court believed the statute required a showing of negligence and the government had made none. The Eighth Circuit reversed that holding on the negligence issue, but never made a finding that the recovery of response costs was available to the government under Sec. 6973 in the first instance, apparently because the jurisdiction of the district court to award the recovery of such costs under RCRA was unchallenged. The issue may have been overlooked because many of the costs sought by the government were explicitly recoverable as response costs under CERCLA.
 
 
 39
 In United States v. Aceto Agricultural Chemicals Corp., 872 F.2d 1373 (8th Cir.1989), the RCRA claim for "response costs" had been dismissed by the district court on the basis of its conclusions concerning the "imminent and substantial endangerment" and the "contributed to" language found in Sec. 6973(a). The Eighth Circuit reversed and remanded for further proceedings, but again never addressed whether the remedy sought was authorized by Sec. 6973.
 
 
 40
 Thus in both NEPACCO and Aceto, because the defendants did not raise the issue of subject matter jurisdiction and neither the district courts nor this Court addressed it sua sponte, the decisions reflect no consideration of the jurisdictional issue; instead, they simply assume subject matter jurisdiction sub silentio and deal with the merits of the EPA's claims to recover cleanup costs. Now that the jurisdictional question is squarely before us, the opinions in NEPACCO and Aceto are not stare decisis on the issue, because the panels in those cases simply assumed, without deciding, that the federal courts are empowered by Sec. 6973 to award the EPA the recovery of cleanup costs. Moreover, except for the KFC Western case, the Furrers have identified for us, and we have found, no cases specifically addressing the availability of a monetary remedy in Sec. 6972 citizen suits since the 1984 amendment (or before 1984 for that matter) that have concluded that Sec. 6972 provides such a remedy. There are several cases from federal district courts, however, that have decided as we do today. See, e.g., Portsmouth Redev. & Housing Auth. v. BMI Apartments Assocs., 847 F.Supp. 380, 385 (E.D.Va.1994); Triffler v. Hopf, No. 92 C 7193, 1994 WL 643237, at * 5 (N.D.Ill. Nov. 4, 1994); Gache v. Town of Harrison, N.Y., 813 F.Supp. 1037, 1045 (S.D.N.Y.1993); Fallowfield Dev. Corp. v. Strunk, Nos. CIV. A. 89-8644, CIV. A. 90-4431, 1993 WL 157723, at * 14-15 (E.D.Pa. May 11, 1993); Commerce Holding Co. v. Buckstone, 749 F.Supp. 441, 445 (E.D.N.Y.1990). Having done our own independent analysis of the issue, we must respectfully disagree with the holding of our sister circuit in KFC Western.
 
 IV.
 
 41
 Our holding leaves the Furrers without a remedy under Sec. 6972 for the recovery of the costs they have incurred in cleaning up their property. We are not unsympathetic to the Furrers' case, but we cannot justify inferring a remedy under Sec. 6972 for the recovery of cleanup costs when we are unable to find any indication that Congress intended to create such a remedy. "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." Touche Ross, 442 U.S. at 578, 99 S.Ct. at 2490. An important part of the statutory scheme in this case is the preservation of remedies under state law. Counsel represented to the Court at oral argument that the Furrers are pursuing their state law remedies in state court. Nothing in this opinion is intended to hinder them in that pursuit.
 
 
 42
 For the reasons stated, the judgment of the District Court is affirmed.
 
 
 43
 BENNETT, District Judge, concurring.
 
 
 44
 Judicial fathoming of Congressional intent is often a treacherous voyage. That is not so here. I wholeheartedly agree with Judge Bowman's well-reasoned and carefully crafted opinion holding that Congress did not intend to create in Sec. 6972 an implied private right of action for the recovery of cleanup costs. I join this opinion unreservedly for I find Judge Bowman's application of the factors identified in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and his divination of Congressional intent, to be unassailable.
 
 
 45
 The Ninth Circuit Court of Appeals in KFC Western, Inc. v. Meghrig, 49 F.3d 518, 523 (9th Cir.1995), and Judge Fagg, in dissent here, may well be right that it may be "unfair and poor public policy to interpret Sec. 6972(a)(1)(B) as barring restitution actions." However, I would add that under our tripartite system of government, it is for Congress, not the federal courts, to make such policy choices. See, e.g., Hudson Distribs., Inc. v. Eli Lilly & Co., 377 U.S. 386, 395, 84 S.Ct. 1273, 1279-80, 12 L.Ed.2d 394 (1964); Baltimore & Ohio Ry. Co. v. Jackson, 353 U.S. 325, 331, 77 S.Ct. 842, 846, 1 L.Ed.2d 862 (1957); Black Hills Institute Of Geological Research v. South Dakota School of Mines & Technology, 12 F.3d 737, 744 (8th Cir.1993). The role of the federal courts, "of course, is as interpreters of the words chosen by Congress, not as policymakers or enlargers of congressional intent." United States v. Gibbens, 25 F.3d 28, 33 (1st Cir.1994).
 
 
 46
 FAGG, Circuit Judge, dissenting.
 
 
 47
 For the reasons stated by the Ninth Circuit in KFC Western, Inc. v. Meghrig, 49 F.3d 518 (9th Cir.1995), I believe the Resource Conservation and Recovery Act's citizen suit provision, 42 U.S.C. Sec. 6972(a)(1)(B), authorizes an innocent private purchaser of property contaminated with solid or hazardous waste to bring an equitable action for reimbursement of clean-up costs. Because the statute permits citizens to obtain injunctive or other equitable relief, "a restitutionary remedy ... falls within the statutory allowance for district court orders that [polluters] take 'such other action as may be necessary.' " KFC Western, 49 F.3d at 521 (quoting 42 U.S.C. Sec. 6972(a)(1)(B)). Given this jurisdictional framework, I readily agree with the Ninth Circuit that it "would be unfair and poor public policy to interpret Sec. 6972(a)(1)(B) as barring restitution actions." Id. at 523. Thus, I would reverse the district court.
 
 
 
 *
 Fagg and Beam, Circuit Judge, would grant the suggestion for rehearing en banc
 
 
 *
 The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 We ordered taken with the case, and now grant, appellees' motions to strike the Furrers' "Supplemental Appendix," which was filed appended to their reply brief
 
 
 [3]
 In what was evidently intended as a preemptive strike, Shell raises in its brief to this Court (and then proceeds to argue against) the possibility that federal common law is an issue in this case. Shell contends that, because there is no statutory cause of action, federal common law is the only possible source of federal jurisdiction, but then argues there is no authority for a federal common law cause of action. In reply the Furrers, insisting that the remedy they seek is statutory, apparently agree with Shell: "There is no issue of general common law jurisdiction presented by" Sec. 6972. Reply Brief of Appellants at 9. The Furrers have pinned their hopes on the statute, and they do not assert any theory of recovery based on federal common law, so we need not and do not discuss that source of authority
 
 
 [4]
 In 1984 Congress changed the language detailing the relief that the district court was empowered to grant from "to enforce such regulation or order, or to order the Administrator to perform such act or duty as the case may be," 42 U.S.C. Sec. 6972(a) (1982), to the present language, quoted above. Clearly the 1984 amendment expanded the available remedies; the question is the degree to which it did so
 
 
 [5]
 The Furrers' brief demonstrates their fundamental misunderstanding of this analysis. They contend that the lack of a federal common law issue in this case, see supra note 3, obviates the need for a review of the factors from Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Somehow they understand the Cort analysis--despite its emphasis on discerning what Congress intended when enacting a statute--to be a search for a cause of action in the federal common law. The Cort decision, however, examined a federal statute for an implied cause of action--which is what the Furrers are asking us to find here. Although federal common law theories of recovery are not relevant to this case, the Cort factors are
 
 
 [6]
 We resolve this appeal on the question of whether the cause of action for recovery of cleanup costs is available under Sec. 6972(a)(1)(B) and pretermit other issues raised by the parties. The District Court concluded, and the appellees urge, that the Furrers did not allege the required "imminent and substantial endangerment to health or the environment" required by Sec. 6972, since the site already has been cleaned up. We do not decide that issue. In its appellee's brief, Shell argues that petroleum leaks from underground storage tanks are not hazardous wastes within the meaning of Sec. 6972; the United States as amicus curiae takes the opposite position. It is also unnecessary for us to resolve this question. Other amici, the State of Missouri and the Bi-State Development Agency of the Missouri-Illinois Metropolitan District, in their briefs take the Furrers' position on the issue on which we do resolve the case
 
 
 [7]
 We do not intend by this discussion to imply any views on the question whether petroleum leaking from underground storage tanks is hazardous waste within the meaning of Sec. 6972. See supra note 6
 
 
 [8]
 Presumably the Furrers did not bring this suit for contribution under CERCLA because CERCLA's definition of "hazardous substance" excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance." 42 U.S.C. Sec. 9601(14) (1988)
 
 
 [9]
 The minority views on the bill reflect a similar understanding of a RCRA citizen suit: that it is "intended to be an emergency type action to abate imminent hazards." H.R.Rep. No. 198, 98th Cong., 2d Sess., pt. 1, at 119 (1984), reprinted in 1984 U.S.C.C.A.N. 5576, 5635
 
 
 [10]
 Justices O'Connor and Scalia would require "an actual congressional intent to create a private right of action," and believe the Cort analysis has been "effectively overruled" by subsequent Supreme Court opinions. Thompson v. Thompson, 484 U.S. 174, 188, 108 S.Ct. 513, 520, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring); see also Roberts v. Wamser, 883 F.2d 617, 623 n. 17 (8th Cir.1989) (questioning "the continued validity of the Cort analysis for determining the existence of private rights of action")