Lisa AKINSEYE; Marietta Neu; and Delia Lane, Plaintiffs,

v.

Ted BIGOS; The Observatory Limited Partnership, a Minnesota limited partnership; and Bigos–Observatory LLC, a Minnesota limited liability corporation, Defendants.

No. CIV. 98–518/RHK/FLN.

United States District Court, D. Minnesota.

Nov. 2, 1998.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiffs Lisa Akinseye, Marietta Neu, and Delia Lane (collectively, "the Plaintiffs") are individuals who currently reside, or have resided, at the Observatory Apartments. The Observatory Apartments are owned and operated by Defendants Ted Bigos, The Observatory Limited Partnership, and Bigos–Observatory LLC (collectively, "the Defendants"). On January 27, 1998, the Plaintiffs filed suit against the Defendants, asserting that the Defendants charged the Plaintiffs excessive rent in violation of the Affordable Housing Disposition Program ("AHDP"), the Minnesota Consumer Fraud Act, the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), and the lease contract between Plaintiff Delia Lane ("Lane") and the Defendants. Before the Court is the Defendants' Motion to Dismiss. For the reasons stated below, the Court will grant the Motion in part as to the AHDP claims. Moreover, the Court will dismiss the Minnesota Consumer Fraud Act, MUDTPA, and breach of contract claims without prejudice because it declines to exercise its powers of supplemental jurisdiction.

### Background [1]

In response to the savings and loans crisis in the late 1980s, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Pursuant to FIRREA, the Resolution Trust Corporation ("RTC") was established to manage and resolve all cases involving thrift institutions that closed between January 1, 1989 and August 9, 1992. *See* 12 U.S.C. § 1441a(b)(3)(A). As part of its duties, RTC acted as conservator or receiver of properties previously held by failed thrifts, and was authorized to sell certain

Thomas J. White, Klein & White, Minnetonka, MN, Gary Liebmann, Burnsville, MN, for Plaintiffs.

Robert L. DeMay, David R. Crosby, Leonard, Street & Deinard, Minneapolis, MN, for Defendants.

---

1. For purposes of this motion, the Court takes as true all facts alleged in the Complaint, and draws all reasonable inferences in favor of the Plaintiffs, the non-movants. *See Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990).

eligible residential properties pursuant to the requirements of the AHDP. *See ACORN v. Resolution Trust Corp.,* 1991 WL 93638, at \*1–2 (N.D.Ill.1991) (detailing the duties of the RTC). Under the AHDP, purchasers of thrift property must agree to provide rental housing opportunities for lower-income, and very low-income families. *See* 12 U.S.C. § 1441a.

In August 1991, the Observatory Limited Partnership, and Bigos–Observatory LLC (collectively, "the Observatory") purchased the Observatory Apartments. (Am.Compl.¶ 12.) The Observatory Apartments consist of two separate buildings; the larger building, OBS I, contains 154 rental units and the smaller building, OBS II, contains approximately 75 rental units. (*Id.* ¶ 8.) The Observatory purchased the OBS I building from the RTC under the AHDP. (*Id.* ¶ 12.) Pursuant to the AHDP, the Defendants were required to make available not less than 35 percent of all dwelling units in OBS I to lower-income and very low-income families at statutorily mandated rental rates. *See* 12 U.S.C. §§ 1441a(c)(3)(E)(I), (c)(4)(A).

The Plaintiffs are low-income individuals who either currently reside, or have resided, in the Observatory Apartments. (Am. Compl.¶¶ 1–3, 19.) Plaintiffs Lisa Akinseye and Delia Lane are current residents of the Observatory Apartments. (*Id.* ¶ 1 & 3.) Plaintiff Marietta Neu resided at the Observatory Apartments from July, 1996 to October, 1997. (*Id.* ¶ 2.) The Defendants charged the Plaintiffs rent in excess of the maximum rental charges permitted by 12 U.S.C. § 1441(a)(c)(4)(A).

The Defendants also participate in a Section 8 housing program pursuant to 42 U.S.C. § 1437f. (Am.Compl.¶¶ 21, 50.) Lane is one of the residents of the Observatory Apartments who receives a Section 8 rent subsidy. (*Id.* ¶ 21.) The Defendants charged Lane rent in excess of the amount approved by the Section 8 contract. (*Id.*)

**Analysis**

**I.  Standard of Review**

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

*Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (quoting *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.1978)). Viewing the complaint in this manner, the Court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

**II.  The Affordable Housing Disposition Program**

■ The Plaintiffs claim that the Defendants charged them excessive rent in violation of the AHDP. (Am.Compl.¶ 19.) The AHDP establishes the percentage of dwelling units that must be made available to lower-income and very low-income families and, in a separate provision, the amount of rent that may be charged for those units. Section 3 of the AHDP provides that "not less than 35 percent of all dwelling units" in multifamily housing property subject to the program "shall be made available for occupancy and maintained as affordable

for lower-income and very low-income families ...." 12 U.S.C. § 1441a(c)(3)(E)(I). Section 4 of the AHDP provides that "[r]ents charged to tenants for units made available for occupancy by lower-income families ... shall not exceed 30 percent of the adjusted income of a family whose income equals 65 percent of the median income for the area." 12 U.S.C. § 1441a(c)(4)(A). The Plaintiffs allege that the rents the Defendants charged each plaintiff violates the rent limitations established in Section 4. (Am.Compl.¶ 19.) The Plaintiffs have not alleged that the total number of rent violations brought the percentage of affordable housing units offered in OBS I below the 35 percent level required by Section 3. The Defendants argue that the Plaintiffs' AHDP claims should be dismissed because the statute does not provide a private cause of action for violations of Section 4. (Defs.' Mem. in Supp. of Mot. to Dismiss at 3–5) ("Defs.' Supp. Mem."). The Court agrees.

Third-party rights under the AHDP are governed by 12 U.S.C. § 1441a(c)(11)(B). This section provides, in relevant part:

> The lower-income occupancy requirements applicable under paragraphs (2), (3), (12)(C), (13)(B), and 14(C) shall be judicially enforceable against purchasers of property under this subsection or their successors in interest by affected very low-income and lower-income families, State housing finance agencies, and any agency, corporation, or authority of the United States Government.

This provision is instructive in the instant case in two respects. First, the third-party rights provision does not include Section 4, the section under which the Plaintiffs bring the instant action, in its lists of AHDP provisions that give rise to a private cause of action. Second, 12 U.S.C. § 1441a(c)(11)(B) specifically states that third parties have a right to judicially enforce "lower-income occupancy requirements," and makes no reference to enforcing rent limitations. Applying the time honored rule of inclusio unius est exclusio alterius, the Court finds that 12 U.S.C. § 1441a(c)(11)(B) does not create a third-party cause of action for violations of Section 4's rental limitations. *See generally United States v. Darden,* 70 F.3d 1507, 1524–25 (8th Cir.1995) (applying the rule of inclusio unius est exclusio alterius).

The Plaintiffs argue that 12 U.S.C. § 1441a(c)(11)(B) does recognize a private cause of action for rent limitation violations because Section 3 provides that 35 percent of the dwelling units should be "maintained as affordable" for lower-income tenants, thereby incorporating Section 4 into Section 3. (Pls.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 6–7) ("Pls.' Opp'n Mem."). The Court does not find the Plaintiffs' argument persuasive. 12 U.S.C. § 1441a(c)(11)(B) explicitly states that a third-party remedy exists for the "occupancy requirements" of Section 3. Therefore, even if the Court were to find that "maintained as affordable" did incorporate the rent limitations of Section 4 into Section 3, a third-party cause of action still would not lie for individual violations of Section 4. Accordingly, the Court finds that the AHDP does not create a cause of action for rent limitation violations.

The Plaintiffs argue, in the alternative, that an implied cause of action for rent limitation claims exists under the AHDP.[2] (Pls.' Opp'n Mem. at 9.) In determining whether an implied private right of action exists, federal courts apply the test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080,

---

**2.** The Plaintiffs also argue that because the AHDP creates a private right of action to enforce at least part of that statute, and because the AHDP does not limit the types of relief the court may award, the Plaintiffs may bring their claims pursuant to the Court's powers to award appropriate relief. (Pls.' Opp'n Mem. at 7–8). Plaintiffs overlook, however, the distinction between the right to bring the cause of action in the first instance, and the type of relief the court may award after a finding of liability. *See Miener v. State of Missouri,* 673 F.2d 969, 977 (8th Cir.1982) (addressing the issue of what damages were available after determining that a private right of action existed to enforce the particular portion of the statute under which the plaintiff sought relief).

45 L.Ed.2d 26 (1975), which places " 'the burden ... on [the Plaintiffs] to demonstrate that Congress intended to make a private remedy available.' " *Furrer v. Brown,* 62 F.3d 1092, 1094 (8th Cir.1995) (quoting *Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 1369, 118 L.Ed.2d 1 (1992)). Under the *Cort* test, the court examines: (1) the statute, to determine if the plaintiffs are in the class for whose benefit the statute was enacted; (2) the legislative history, to see if the statute explicitly or implicitly shows an intent to create or deny the cause of action; (3) the proposed remedy in the context of the purpose of the statutory scheme; and (4) whether the cause of action is one traditionally a matter of state law, so that inferring a federal remedy would be inappropriate. *Furrer,* 62 F.3d at 1094–95 (citing *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087). The last two *Cort* factors "are only of relevance if the first two factors give indication of congressional intent to create the remedy." *California v. Sierra Club,* 451 U.S. 287, 298, 101 S.Ct. 1775, 1780, 68 L.Ed.2d 101 (1981). The Eighth Circuit has recognized, however, that the *Cort* analysis no longer involves a balancing of the four factors; the factors now serve only as " 'guides to discerning congressional intent.' " *Furrer,* 62 F.3d at 1100 (citing *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 515, 98 L.Ed.2d 512 (1988)). " 'The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.' " *Id.* (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979)).

The Court finds that the Plaintiffs are in the class for whose benefit the statute was enacted. The Plaintiffs are lower-income individuals who rent residential units purchased from RTC under the AHDP. (Am. Compl.¶ 19.) The AHDP expressly provides that its purpose is "to provide home-ownership and rental housing opportunities for very low-income, lower-income, and moderate-income families." 12 U.S.C. § 1441a(c)(1). Therefore, the benefit of the AHDP requirements can properly be said to inure to the Plaintiffs in the instant case.

■ In determining whether the legislative history explicitly or implicitly shows an intent to create or deny the cause of action, federal courts have uniformly invoked the doctrine of inclusio unius est exclusio alterius. *See Furrer,* 62 F.3d at 1096 (" 'When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.' ") (quoting *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)); *see also Mallett v. Wisconsin Div. of Vocational Rehabilitation,* 130 F.3d 1245, 1250 (7th Cir.1997);. The Court has already applied this canon of statutory construction to the instant case and determined that Congress evidenced an intent not to create a private cause of action for violations of the AHDP's rent limitations.[3] Because the Court determines that no explicit or implicit evidence of legislative intent to create a private right of action exists, the Court need not address the third and fourth factors of the *Cort* test. Therefore, the Court finds that the Plaintiffs do not have standing under the AHDP and, accordingly, will grant the Defendants' Motion to Dismiss with regard to the Plaintiff's AHDP claims.[4]

**3.** The Eighth Circuit has recognized that settled rules of statutory construction can yield to " 'persuasive evidence of a contrary legislative intent.' " *Furrer,* 62 F.3d at 1097 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)). Because the Plaintiffs have identified no such evidence, they have failed to meet their burden of proof under *Cort,* and the Court will not depart from the conclusion required by the canons of statutory construction applied in the instant case.

**4.** Because the Court will grant the Defendants' Motion to Dismiss as to all AHDP claims, the Court need not address the Defendants' argument that the Plaintiffs' failure to join an indispensable party warrants dismissal.

## III. Subject Matter Jurisdiction

This Court had jurisdiction over the instant case pursuant to the federal question raised by the Plaintiffs' AHDP claims under 12 U.S.C. § 1441a. *See* 28 U.S.C. § 1331 (providing that, without regard to the citizenship of the parties or the amount in controversy, a federal court has jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States"). The Plaintiffs' remaining state law claims fall within this Court's jurisdiction through the Court's supplemental jurisdiction powers. *See* 28 U.S.C. § 1367(a). With the dismissal of the Plaintiffs' federal claim, there remains no independent federal question jurisdiction to support the Court's exercise of supplemental jurisdiction over the state law claims against the Defendants.[5] The Court further notes that because the Plaintiffs are Minnesota domiciliaries and the Defendants are either Minnesota corporations or Minnesota domiciliaries, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332 (1998) (providing that without regard to whether a particular claim arises under federal law, federal courts have original jurisdiction over any civil action in which there is both complete diversity of citizenship among the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").

The absence of original jurisdiction over any of the claims remaining in the instant case does not, however, automatically deprive this Court of jurisdiction to hear the Plaintiffs' state law claims. 28 U.S.C. § 1367(c) gives the district court discretion in deciding whether it will exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. This Court believes that the interests of judicial economy, fairness, convenience, and comity militate strongly in favor of not exercising this Court's supplemental jurisdiction powers. *See, e.g., Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1352–53 (11th Cir.1997) (noting the factors that the court should consider when deciding whether to exercise supplemental jurisdiction and stating that state courts, not federal courts, should be the final arbiters of state law). Therefore, this Court declines to exercise its supplemental jurisdiction powers and, accordingly, will dismiss the Plaintiffs' Minnesota Consumer Fraud Act, MUDTPA, and breach of contract claims[6] without prejudice.[7]

### Conclusion

Accordingly, for the foregoing reasons, and based upon all of the files, records, and proceedings herein, **IT IS ORDERED:**

(1) the Defendants' Motion to Dismiss (Doc. No. 12) is **GRANTED** as to all AHDP claims; and said claims are **DISMISSED WITH PREJUDICE.**

(2) because the Court declines to exercise its supplemental jurisdiction powers, the Minnesota Consumer Fraud Act, MUDTPA, and breach of contract claims shall be **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**5.** The Plaintiffs' Minnesota Consumer Fraud Act, MUDTPA, and breach of contract claims all arise under Minnesota law and, therefore, do not present a federal question.

**6.** Because the Court declines to exercise its supplemental jurisdiction, it will not address the Defendants' argument that the Court should strike the Plaintiffs' request for punitive damages.

**7.** Under 28 U.S.C. § 1367(d), the period of limitations for state law claims shall be tolled for a period of 30 days from the decision of this Court.