# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00768-CV

**Pearl Witkowski and Joseph Phillips, Individually and on behalf of a class of all others similarly situated; and Deanna Warner, Individually and on behalf of a class of all others similarly situated, Appellants**

**v.**

**Brian, Fooshee and Yonge Properties, a Texas General Partnership; George Yonge; Jefferson Fooshee; Patrick Brian; and Embrey Partners, Ltd., a Texas Limited Partnership, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN000998, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

This lawsuit arises from the sale of the River Woods apartment complex ("River Woods"), located in Austin, Texas. In 1991, the Resolution Trust Corporation ("RTC") sold River Woods to appellee George Yonge for a reduced price and required Yonge and his successors-in-interest to adhere to certain low income housing restrictions, and occupancy and rent-control provisions memorialized in a recorded land use restriction agreement ("LURA"). *See* 12 U.S.C. § 1441a(c)(9)(E). A successor-in-interest to River Woods and a party interested in acquiring River Woods, appellees in this action, provided the Texas Department of Housing and Community Affairs ("TDHCA")[1] with evidence of River Woods's dilapidated condition and petitioned the TDHCA to

---

[1] The TDHCA entered into a Memorandum of Understanding for Monitoring and Enforcement with the RTC to monitor and enforce property owner compliance with all occupancy,

release the LURA. Based on the TDHCA's recommendation, the FDIC[2] released the LURA in 1998, and the property was sold to a third party. Appellants, former tenants of River Woods, and others who would qualify as tenants under the LURA restrictions brought a class action suit against the appellees for damages associated with the alleged premature release of the LURA. The district court granted summary judgment in favor of the appellees and this appeal followed. Concluding that appellants lack standing, we affirm the district court's order.

## BACKGROUND

In 1991, RTC sold River Woods to appellee George Yonge for $725,000, and conditioned the sale subject to certain low income housing restrictions, occupancy and rent-control provisions memorialized in a recorded LURA. *See* 12 U.S.C. § 1441a(c)(9)(E). Yonge conveyed the property, subject to the LURA, to appellee Brian, Fooshee and Yonge Properties ("BFY"). Under its own terms, the LURA expires upon (1) the lapse of 40 years from the date the LURA was signed; (2) the involuntary loss of River Woods by seizure, condemnation, or foreclosure; (3) the total or partial involuntary casualty loss; or (4) a determination by the appropriate oversight agency that all or a portion of River Woods is obsolete as to physical condition, location, or other factors, such that River Woods would be unusable for housing purposes, and that no reasonable program of modifications is financially feasible to remediate River Woods.

---

rent, and resale requirements set out in LURAs executed pursuant to 12 U.S.C. 1441a(c).

[2] The FDIC succeeded the RTC as Receiver for the bank from which River Woods was purchased.

In 1997, appellee Embrey Properties ("Embrey") offered BFY $3,000,000 for River Woods, conditioning the purchase of the property on the release of the LURA. Yonge formally petitioned the TDHCA to determine that the LURA had terminated due to the condition of the property and to recommend that the FDIC release the LURA. Embrey's vice president of development met with TDHCA and provided it with an independent inspection report on the dilapidated condition of the property and with Embrey's proposed redevelopment plans. In February of 1998, the TDHCA recommended to the FDIC that the LURA at River Woods be released on the grounds that the property was "obsolete as to physical condition" and not financially feasible to rehabilitate, a condition sufficient to terminate the LURA. The FDIC released the LURA in March of 1998. The property was sold in 1999 to a third party to whom Embrey had assigned its right to purchase River Woods.

The River Woods tenants were evicted following the sale of the complex. Pearl Witkowski and her daughter, lower income tenants of River Woods, brought suit against the appellees in their individual capacities and on behalf of former River Woods tenants and those lower income and very low income individuals qualified to live at River Woods under the LURA. They were joined by Joseph Phillips, another former tenant, and by Deanna Warner, an individual eligible for a low-income unit in the complex under the LURA restrictions.[3] For clarity, we refer to the proposed class as "appellants."

_____

[3] Witkowski ultimately withdrew as a class representative. Plaintiffs' First Amended Original Class Action Petition, filed on October 19, 2000, added Joseph Phillips as a class representative.

Appellants sued BFY, the BFY partners individually, and Embrey, (collectively n as "appellees") for fraud, breach of fiduciary duty, breach of contract, tortious interference, unjust enrichment, negligence, and breach of implied warrantee of habitability, and for damages resulting from the LURA's release, caused by the appellees' allegedly fraudulent representations to the TDHCA. In other words, appellants seek to hold appellees liable for damages allegedly caused by the TDHCA's and FDIC's actions releasing the LURA. Appellees jointly moved for summary judgment on three independent grounds: (1) appellants lacked standing to bring their suit; (2) the *Noerr-Pennington* doctrine protected appellee's actions, or (3) appellants failed to allege a legal injury. The district court granted summary judgment for the appellees. This appeal followed.

## DISCUSSION

Appellants appeal the district court's summary judgment decision on three grounds. First, appellants argue that they have standing to sue the appellees. Second, appellants argue that the *Noerr-Pennington* doctrine does not protect the appellees' actions. Third, appellants argue that their claims are not barred by the "legal injury" doctrine.

*Standard of Review*

The movant has the burden of showing there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). To prevail on summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d

4

671, 678 (Tex. 1971). When a district court grants summary judgment without specifying the ground for its decision, on appeal, summary judgment will be affirmed if "any of the theories advanced are meritorious." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). Because the district court did not specify the grounds for granting summary judgment, if we find that any one of appellees' three grounds is meritorious, we must uphold the grant of the motion for summary judgment. *See id*.

*Standing*

Appellants assert that they have standing to sue appellees for injuries resulting from alleged misrepresentations appellees made that prompted the TDHCA to release the LURA, as intended third party beneficiaries under 12 U.S.C. 1441a(c) ("section 1441a(c)"), or, alternatively, as express third party beneficiaries of the LURA at common law. We discuss the merits of each theory in turn.

Appellants assert that section 1441a(c) provides two bases under which they may sue appellees. First, appellants argue that although there is no specific language in the statute that grants appellants a private right of action against appellees for damages related to the alleged improper release of the LURA, the purposes behind section 1441a(c) and the statutory provisions that benefit appellants, taken together as a whole, create actionable rights for appellants. *See* 12 U.S.C. § 1441a(c). Appellants point to subsection 1441a(c)(1) (residential properties acquired from the RTC are intended to provide home ownership and rental housing opportunities for very low-income, lower income, and moderate-income families) and subsection 1441a(c)(3)(E) (at least 35% of any multifamily housing sold by the RTC under this program is required to be set aside for occupancy

5

and maintained as affordable for lower income and very low-income families during the remaining useful life of the property) as evidence of this intent. *Id.* §§ 1441a(c)(1), 1441a(c)(3)(E). Second, appellants argue that affected lower income and very low-income families, such as appellants, may enforce the occupancy requirements against purchasers of the property and their successors-in-interest. *Id.* § 1441a(c)(11)(B). Appellants assert that these provisions apply to the appellees because they are purchasers and successors-in-interest of the River Woods property, which is identified in the LURA as an "eligible multifamily housing property." *See id.* § 1441a(c)(9)(E). We disagree.

The key inquiry a court must make in determining whether an implied private right of action under a certain federal law exists is whether Congress, expressly or impliedly, intended to create a private right of action. *Schmeling v. NORDAM*, 97 F.3d 1336, 1343-44 (10th Cir. 1996) (Explaining that the four factor *Cort*[4] test, previously used to determine whether a private cause of action exists, had been condensed into one factor—assessing Congress' intent.); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (Scalia, J., concurring) (effectively overruling the *Cort v. Ash* analysis in *Touche Ross*,[5] converting one of its four factors (congressional intent) into the determinative factor.)). Furthermore, it is a well-settled rule of construction that where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Duncan v. Walker*, 533 U.S. 167, 173 (2001).

---

[4]  *Cort v. Ash*, 422 U.S. 66, 78 (1975).

[5]  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)

Third party rights are articulated in section 1441a(c)(11)(B). Appellants admit that section 1441(a)(c) does not explicitly provide them with a private right of action against appellees for damages resulting from the alleged improper actions of the TDHCA and FDIC. Thus, we must determine whether Congress intended appellants to have an implied private right of action. *See Schmeling*, 97 F.3d at 1344. Under section 1441(a)(c), Congress expressly granted a private right of action for those in the protected class to sue to enforce the rental restrictions in a LURA. *See* 12 U.S.C. § 1441a(c)(9)(E). Congress did not include any language that would provide appellants with a private right of action against those whose alleged wrongful actions, misrepresentations or omissions may have contributed to a government agency releasing the LURA. Thus, under established statutory construction principles, we must conclude that Congress intentionally and purposely excluded the private right of action appellants seek. *See Duncan*, 533 U.S. at 173.

Furthermore, subsection 1441a(c)(11)(B) does not support appellant's argument. *See* 12 U.S.C. 1441a(c)(11)(B). Section 1441a(c)(11)(B) establishes a cause of action for residents to enforce the housing restrictions and requirements set forth in an existing LURA; it does not implicate standing to challenge the termination of the LURA. *See id*. Because the LURA under which appellants attempt to sue was released by government action in March 1998, appellants no longer have any LURA restrictions to enforce. Thus, appellees are no longer subject to section 1441a(c) restrictions.

Because we determine that no explicit or implicit evidence of legislative intent to create an express or implied private right of action exists, we hold that appellants lack standing under section 1441a(c) to bring this suit. *See Akinseye v. Bigos*, 75 F. Supp. 2d 976, 980 (D. Minn. 1998).

Appellants assert alternatively that they are express third party beneficiaries of the LURA and thus have a cause of action under common law to sue the appellees for their nonperformance. *See Cumis Ins. Soc. v. Republic Nat'l Bank*, 480 S.W.2d 762, 767 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.). However, because the LURA was released by agency action, there is no contract under which appellants may be third party beneficiaries. Thus, we do not reach the question of whether appellants had third party beneficiary rights under the LURA.

## CONCLUSION

We conclude that appellants do not have standing to sue the appellees under either federal or state law and hold that the district court properly granted appellees' motion for summary judgment. *See State Farm Fire & Cas. Co.*, 858 S.W.2d at 380. Therefore, we need not reach the appellants' second and third issues.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:  June 23, 2005